[No. 8419.]

## THE ELECTION COMMISSION OF THE CITY AND COUNTY OF DENVER V. THE PEOPLE EX REL. LEE.

1.  ELECTIONS—*Political Party—Statute Construed.*  In common use the phrase "political party" is synonomous with political organization; but the legislature by c. 4 of the laws of 1910 make a marked distinction between them.  An association of electors, who, by petition, place upon the official ballot, individual nominees for public office are a "political organization," even though this is not their intention.  To become a political party it must participate in the election, and its candidate for governor must receive at least 10 per cent of the total vote cast at such election.  (108, 109)

A political party cannot nominate by petition, nor can a political organization, so nominating, adopt any portion of the name of a political party then existing.  (109)

2.  ——*How the Percent of the Vote is to be Ascertained.*  Distinct political organizations, under different names, presented the same gentleman as their candidate for governor.  One of these was denominated the Progressive Party.  On application to the Election Commission of Denver by those claiming this title, to accept and use in the appointment of judges and registrars, at the next succeeding election, certain electors nominated by them; *held* that the votes cast by all these several organizations for the same candidate, were not to be considered as cast by the Progressive Party.  The right of the relator it was said is not conditioned upon the number of votes which its candidate received, but upon the number which his organization cast.  (110)

And evidence that the several different organizations, so voting for the same person, were but one organization, under different names, was held inadmissible.  (111, 112)

A political organization is, under the statute, a distinct entity which can neither coalesce with another, nor lose its identity therein by the mere fact that its candidates, principles, and management are the same.  (111)

*Error to Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

Mr. FRANCIS J. KNAUSS, Mr. W. W. GARWOOD, for plaintiffs in error.

Mr. C. M. DEARDORFF, Mr. P. W. MOTHERSILL, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

The People, upon the relation of A. A. Lee, as Chairman of the County Central Committee of the Progressive Party of the City and County of Denver, brought an action in the District Court to compel the Election Commission of such territorial district to accept and use in the appointment of judges and registrars of election therein, for the two year period beginning on the first Tuesday of July, 1914, the list of names of certain qualified electors claimed to have been certified to the proper officers by such organization under the provisions of chapter 127, S. L. 1911. Judgment was in favor of the plaintiff, and the defendant Election Commission brings the cause here for review upon writ of error.

. The record discloses that at the primary election in 1912 the Democratic Party selected as its candidate for Governor, E. M. Ammons, and in the general election following he received 25,066 votes in the City and County of Denver, and in the entire state 114,044; that the Republican Party at such primary selected as its candidate for Governor, C. C. Parks, who received at the general election following 7,909 votes in the City and County of Denver, and 63,061, in the entire state. The Democratic and Republican Parties were the only organizations participating in the primary election, and Ammons and Parks were the only candidates for the gubernatorial office nominated by such direct primary election under the provisions of Chapter 4, S. L. 1910. At the general election, however, there were other candidates for such office, who had been placed in nomination

therefor by petition of qualified electors under the provisions of the last named act. One body of qualified electors, so making nominations, styled itself the Progressive Party and filed its certificate of nominations of candidates at 9:03 A. M., September 6, 1912, in which it named Edward P. Costigan for Governor. Another body of such qualified electors, styled itself the Roosevelt Party and, on the same day at 9:05 A. M., filed its certificate of nominations, also nominating Edward P. Costigan as its candidate for Governor. And on the 11th day of September, 1912, another body of such qualified electors, under the name of the Bull Moose Party, likewise filed a certificate of nominations wherein Mr. Costigan was also named as its candidate for Governor. The vote which Mr. Costigan received at the general election on either of these tickets is not disclosed, though it is shown that he received 23,278 votes in the City and County of Denver, and in the entire state 66,132.

By the provisions of § 3 of Chap. 127, *supra,* the respective county chairmen of the two political parties in each county "having cast the highest number of votes for Governor at the last general election for state officers" are required, between the first day of May and the third Tuesday in June, 1914, to certify to a designated county officer the names of not less than three nor more than six qualified electors in each of the precincts; and, in conjunction with certain provisions of the charter of the City and County of Denver, the Election Commission is required to appoint from such list, when so certified, the registrars and judges of election. Therefore, the sole questions here involved are: (1) Was the organization—the Progressive Party—of which relator claims to be chairman a "political party" within the meaning of the election laws of this state at the general election in 1912; (2) At the time the registrars and judges of elec-

tion in question were to be appointed, was the Progres-sive Party, within the meaning of the election laws, a "political party" "having cast" the highest or second highest "number of votes for governor" at the general election in 1912?

(1)   We are of the opinion that at the general election in that year the association of electors known as the Progressive Party was not a "political party" within the meaning of the election laws, but was a "political organization" only, and, as such, cast its vote at that election.   We can reach no other conclusion under the express language of chapter 4, S. L. 1910, which defines "political parties" and "political organizations," making a marked distinction between the two.   While, ordinarily, the phrases are synonymous the legislature has not so used them.   This is manifest throughout the entire act.   Section 1 expressly declares, *inter alia,* "that all political parties shall make all nominations for candidates   *   *   *   by direct primary elections."   Section 10 provides, that "each political party entitled to participate in any direct primary election shall have a separate party ticket," while § 24 declares, substantially, that except in the case of vacancies, no nominations of candidates of any political party which is required to make nominations under the act, shall be placed upon the official election ballot unless such candidates shall have been chosen in accordance with the act.   Moreover, by § 21 central committees of parties existing at the time the act became a law were recognized and continued until direct primary elections should be held under the provisions of the act at which, and thereafter at each succeeding primary election, political parties were and are required to elect a resident committeeman and committeewoman from each election precinct who are constituted the rep-

resentatives, and central committee, of their respective political parties. And by § 22 the candidates for state offices and representatives for congress nominated by each political party at each direct primary election, together with the state chairman and state senators of such political party whose term of office extends beyond the second Tuesday in January of the year next ensuing, shall meet at a designated time and place and formulate the state platform of their respective parties. On the other hand, a "political organization" must select its candidates by petition of qualified electors as prescribed in the act; and there is no provision made for the selection of precinct officers, central committees or chairmen of such organizations; nor are its candidates required to formulate and publish a platform. Moreover, § 2 expressly provides how a "political organization" may, and when it shall, become a "political party." Therein it is declared that any "political organization" which, at the general election last preceding any primary election provided for in the act, was represented on the official ballot by either regular party candidates or by individual nominees only, may upon complying with the provisions of the act, have a separate primary election ticket as a political party, *if its candidate for governor received ten per cent. of the total vote cast at such last* preceding general election; and any such political organization shall be a "political party" within the meaning of the term as used in the act. Thus it clearly appears that an association of qualified electors who, by petition, place upon the official ballot individual nominees for public office, constitute and are a "political organization;" that as a condition precedent for such "political organization" to become and be a "political party" within the meaning of the act, it shall participate in such election, and, in addition thereto, cast for its candidate

for governor at least ten per cent. of the total vote cast at such election. When these things occur the "political organization" becomes a "political party."

(2) It may be, though we shall not now determine, that a "political party," having become such at a general election and cast thereat the highest or next highest number of votes for governor, is, subsequent thereto and prior to the following general election, one of the two political parties having cast the highest number of votes for governor at the last general election, and, therefore, entitled to participate, under the provisions of the act, in the selection of election registrars and judges. But, be that as it may, it is clear that the record before us fails to show that the Progressive Party comes within that class. The fact that its candidates at the only state election in which it has participated were placed upon the official election ballot by petition and not by nomination at a primary, fixed its status as an organization which is presumed to continue until some other status is established by proper proof. The claim is that this was accomplished by showing the total votes Mr. Costigan received. This might, *prima facie*, be sufficient, were it not for the fact that the record shows that he was also the candidate of two other organizations for the same office at the same election. Clearly no presumption can arise, even *prima facie*, under such facts that the Progressive Party cast all the votes Mr. Costigan received thereat, or any particular number thereof. To indulge that presumption would be as improper as to assume that all such votes were cast by either or both of the other "political organizations" whose candidate he was. The right claimed by the relator herein is not, under the statute, conditioned upon the number of votes which its candidate for governor received, but upon the number of votes which his organization cast for governor. If a

person be the candidate solely of one "political party" or a single "political organization," the votes which he receives at a given election are conclusively presumed to have been cast by the particular party or organization whose candidate he is; but if he be the candidate of two or more "political parties" or "political organizations" no such presumption can exist. However, it is asserted and evidence was offered to show, that the "Progressive Party," the "Bull Moose Party" and the "Roosevelt Party" were but different names for one and the same "political organization," the principles and management of which were identical and whose candidates were the same. Were it not that the statute, as hereinbefore pointed out, makes a marked distinction between "political parties" and "political organizations," investing the latter with the power to become the former, such evidence might be admissible and, perhaps, control the question involved. But, as the law is, the selection of a name and the filing thereunder of a list of nominees by the requisite number of electors, creates a distinct entity, to-wit; a "political organization," which can neither coalesce with some other such entity nor lose its identity therein by the mere fact that its candidates, its alleged principles and its management are the same. This entity may, however, and does, upon certain conditions, become a different entity, towit; a "political party." Indeed, it would seem that one clear purpose of the statute is to protect the names selected and thus preserve party integrity. Electors nominating candidates by petition are required to select a name to designate their organization and are prohibited from using the name, or any part, thereof, of any political party as defined in the act Moreover, they are required to make oath, *inter alia,* that they have not voted at any primary election to nominate candidates for such offices, and no certificate

of nomination is legal that does not contain the requisite number of names of voters whose names do not appear on any certificate of nomination previously filed. § 26, Chap. 4, S. L. 1910. Clearly these several political organizations cannot be held to be synonymous under the laws of this state. We have already so held in *Wiley v. McDowell,* 55 Colo. 236, 239, 133 Pac. 758, in the following language:

"It was alleged and sought to be shown, that the Progressive, Bull Moose and Roosevelt tickets were the same and represented the same party, and that the candidates on each of said tickets for state officers were the same persons, and a vote cast for anyone was a vote for the same party as either of the others; that the words, 'Progressive,' 'Bull Moose' and 'Roosevelt' each meant, and were understood by the voters to mean, the same party; that while in Gunnison county the Progressive was the only one which filed a separate and distinct petition endorsing the Republican county ticket and candidates, thereby placing in nomination as their candidates the same as those already upon the Republican ticket, that it was the same in fact as if separate petitions had been secured and filed representing each of said names, for which reason that the electors who wrote either the word 'Roosevelt' or 'Bull Moose' in the space in the ballot to be filled out in order to vote a straight ticket, intended thereby to vote for the county candidates on the Republican and Progressive tickets and did so vote. We cannot accept this conclusion."

If, as claimed by plaintiff, there was no actual intent or purpose on the part of the two groups of qualified electors preparing, signing and filing respectively the "Bull Moose" and "Roosevelt" certificates of nomination, of forming a "political organization" separate and distinct from the "Progressive Party," there was, never-

theless, within the purview of the law, such intent which controlled their action in the premises. They did exactly what the statute says they may and must do to create "political organizations," which may and do, upon certain conditions, become "political parties" each separate and distinct from the other. Under each respective designation the voters thereof acquired certain political rights and benefits, separate and distinct from those acquired by the electors voting under some other political or party designation. The record shows that the vote Mr. Costigan received was cast by three political organizations which, in law, are conclusively presumed to be separate and distinct and each of which might have, by that very election, become a distinct political party, but it does not disclose the number of votes cast for him by either of such organizations and, therefore, fails to show that the relator is the county chairman of either of the "two political parties having cast the highest number of votes for governor at the last general election." It was incumbent upon relator to show this fact and, having failed in that regard, no court should interfere with the judgment of the Election Commission in the premises.

*Attorney General v. McOsker,* 198 Mass. 344, 84 N. E. 473, relied upon by relator is not in point under the law and facts here involved. Under the statute in that case no distinction appears to exist between a "political party" and a "political organization," and, therefore, the general definition, that a "political party" is a voluntary association of voters desirous of promoting a common political end or carrying out a certain line of public policy, maintains. Moreover, the statute there permits the name of a "political party" to be used in conjunction with some other name in the designation of candidates nominated by petition requiring the words "nomination paper" to be added on the official ballot following

such political designation which, the opinion holds, page 473, "is for the purpose of showing which candidates, belonging to the party, are regularly nominated and which are nominated by individuals * * * and implies that when the same person is the nominee in both forms, all the votes cast for him may be treated as belonging to the same party." Under the statute in the case at bar a "political organization," as we have heretofore seen, is not synonymous with a "political party" and the meaning of the two phrases is circumscribed and limited; and electors nominating candidates by petition are expressly prohibited from using a party name or any part thereof in the designation of candidates.

Further, the Attorney General-McOsker case grew out of a contest by two factions of the same party for the use of the party name wherein each faction, while awaiting the determination of the question as to the right to the use of the name, filed its list of nominees, by petition, upon the last day that nominations could be so made. One faction used the regular party name "Democratic" in conjunction with the word "Citizens'" to designate its list of candidates, which were the same, except in one instance where the candidate had withdrawn, as its convention nominees, while the other used the words "Independent Citizen," and its candidate for governor was the same as that of the other faction. The tribunal before which the controversy was pending finally decided that the convention certificate of nominations presented by the faction that subsequently filed its list of nominees by petition under the designation "Democratic Citizens'" was the act of the Democratic Party, and the names of the candidates therein set forth should go upon the official ballot under such party designation. It was then too late to withdraw the list of nominees by peti-

tion made by this faction under the designation "Democratic Citizens.'" While it was held therein that in determining the highest number of votes for governor cast by the Democratic Party, the number cast under the designation "Democratic Citizens'" should be included, it was, nevertheless, pointed out that those cast for the same candidate under the designation "Independent Citizen," and those cast for him under no designation, should not be included. In other words, under the statute there involved, there being no distinction between a "political organization" and a "political party," the latter may nominate candidates for public office either by convention or petition, subject only, under the last named plan, to the use of some other word in conjunction with the party name, while nominations, by petition without the use of party names, indicate an intention to create a new party, and the votes cast thereunder for a candidate may not be included in ascertaining the number of votes cast for such person by some other party under its party designation. Under our statute, as we have seen, a "political party" cannot nominate by petition, nor can an organization, so nominating, use any portion of a party name, and the filing by petition of a certificate of nominations by the latter is necessarily the initiatory act in the formation of a new party.

We are of the opinion that the judgment of the trial court coercing the Commission was wrong under the state of facts shown by this record. It is, therefore, set aside and the cause remanded with directions to dismiss the same.

*Judgment reversed and remanded.*

Decision *en banc.*

Mr. JUSTICE HILL not participating.

CHIEF JUSTICE MUSSER and Mr. JUSTICE SCOTT dissent.