## Eagle, Mayor, etc., v. Cox.
(Decided March 26, 1937.)

HIRAM H. OWENS for appellant.

STEPHENS & STEELY and M. A. GRAY for appellee.

OPINION OF THE COURT BY MORRIS, COMISSIONER—Affirming.

The question for determination is whether or not appellee was legally elected to the office of Mayor of Corbin, Ky., on November 3, 1936. The court below, in a proceeding begun and conducted under the declaratory judgment law (Civ. Code Prac. sec. 639a—1 et seq.), adjudged that appellee was so elected and enjoined appellant from refusing to recognize him as the lawfully elected mayor.

Corbin, a city of the third class, during the period involved, was operating under the commission form of government. In November, 1935, appellant was elected as one of two commissioners then regularly elected for a two-year term, assuming office in January, 1934. One S. B. Marcum had been elected to the office of mayor in 1933 for a four-year term, assuming office in January, 1934. Early in April, 1936, J. M. Tipton instituted a proceeding leading to the removal of the mayor, on the ground that he had entered into contracts for the purchase of materials to be used by the city, from a company in which he had an interest. Hearing on the charge was had, and on April 16, 1936, an order was entered removing the mayor from office. Reverting for the moment, it appears from the record that upon assumption of office by appellant, he was by the then mayor and his fellow commissioner elected mayor pro tem. (section 3840b-13) and as such invested with power to perform the duties of mayor in the event of the mayor's absence from the city or his inability to attend to official duties.

Upon the removal of the mayor, J. M. Tipton was appointed commissioner. Section 3480b-21 authorized an appointment of commissioner until the vacancy might be filled. Under the section supra, it is provided that in case of a vacancy in the office of mayor, the pro tem. mayor shall act as mayor and possess all the rights and powers and perform all the duties of the mayor under the official title however, of mayor pro tem., until such vacancy is filled, whereupon if his term has not then expired he drops back into the office of commissioner. Under the law Marcum's term as mayor would have ended January, 1938; his successor to be regularly elected in November, 1937.

Taking the view that a vacancy existed by reason

of Marcum's removal and his failure to pursue necessary steps for his reinstatement, and that more than three months would intervene between the date of removal or vacancy in the office (Const. sec. 152), Dr. Cox circulated petitions to have his name printed on a ballot as an Independent candidate for Mayor of Corbin. The city of Corbin is located in two counties, Knox and Whitley; the larger part of the city being in Whitley.

Three petitions were circulated; one contained the names of voters living in the Whitley portion of the city, one signed by those living in the Knox portion, the third signed by voters of both Knox and Whitley counties, all residents of Corbin. The one signed by the voters of both counties contained names of 30 voters; the one signed by Whitley voters about 28 or 29; and the one signed by the Knox voters contained 26 names. One of these petitions was filed with the clerk of Knox county, one with the clerk of Whitley county, and a third filed with the Secretary of State at Frankfort. The petitions filed with the county clerks on September 19, 1936, were certified to the Secretary of State; this is true of one of the petitions to say the least, and the Whitley county clerk was notified by the Secretary of State to place appellee's name on a ballot to be voted in the regular election.

The election was held on November 3, the result being certified by the election officers to the respective county clerks and to the State Board of Election Commissioners at Frankfort. Each of the clerks above mentioned certified to Dr. Cox that he had been elected mayor, as did the proper officer of the State Election Commission. In addition to these numerous precautionary filings and receipts of evidence of his election, appellee procured from the Governor of the State a commission evidencing his election as mayor of Corbin.

These returns showed that appellee had received 1,255 votes, the combined total of all votes cast for others being 580. After the issuance of certificates to him, the appellee on November 24, appeared in the county court of Whitley county, produced his evidences of title to office, executed bond in the sum of $10,000 as required by law, which was approved by the judge of the Whitley county court who administered to appellee the oath of office. Appellee filed duly certified copies of the qualifying orders with the Knox county clerk.

At a meeting of the Board of Commissioners held on the same night appellee appeared with documentary evidences showing his election and qualification, which were presented to the board in session. The mayor pro tem., or acting mayor, with one Commissioner Tipton, refused to recognize the claims of appellee, directed the city clerk to lay aside the proffered documents, which he did, and appellee was not allowed to take any part in the proceedings.

On December 8, 1936, appellee filed his petition in equity in the Whitley circuit court setting out in detail the foregoing alleged facts and others which we deem immaterial to the issues, and upon these and a later amended petition, prayed the lower court for a declaration of his rights, seeking to have his election adjudged valid, and an order restraining appellant from further refusing to recognize him as the duly elected Mayor of Corbin.

Appellant in due time answered both original and amended petitions, denying therein each and every allegation of the pleadings and setting up affirmatively six or eight grounds which challenged the title to the office claimed by appellee; his right to maintain action against appellant; attacking the entire procedure whereby appellee was undertaking to establish his title. It was also pleaded that appellant had such a title to the office as could not be successfully attacked by appellee. In short, the issue came down to an assertion by appellee that appellant was usurping the office of mayor, while appellant said that appellee was attempting usurpation.

We shall not attempt to set out the numerous and various matters of defense plead as they appear in the answers, replies, and rejoinder, which completed the issues. It is sufficient for the purposes of this case to present as briefly as possible, such defenses as are presented to us in brief, under the assumption that appellant has incorporated therein all claimed material contentions.

It is insisted that Dr. Cox could not have his name placed on the ballot for the November (regular) election, because he was not nominated as required by section 1550-1f, Ky. Stats., which became a law May 16, 1936, when the same is read in connection with section 3480b-10a, Ky. Stats. These two sections, as quoted in appellant's brief, read as follows:

"Hereafter all candidates for elective offices to be voted for at any general election shall be nominated by a primary held in accordance with the provisions of this Act. * * * The provisions of this Act shall not apply to candidates for trustees of common schools or members of school boards nor to trustees in towns of the fifth and sixth class."

"Method of nomination and election.—The Mayor, Police Judge, Prosecuting Attorney of the police Court, and City Commissioners, shall be nominated and elected in the manner provided by the general election laws and general primary law of the State of Kentucky for the nomination and election of state and county officers."

It is noted that appellee sought to have his name on the ballot as a candidate of the Independent Party, his emblem to be the hand of justice balancing scales. He did not seek to be elected as a member of the Democratic or Republican Party, or to have his name placed under the emblem of either of the dominant parties.

The act of 1936 (Ky. Stats. sec. 1550-1c et seq.), a re-enactment of the old primary law, is and was from the beginning a "party law" applying strictly to nominations by an affiliation or organization of electors representing a political party having a constituted authority for its government and regulation, and which at the last preceding election at which presidential electors were voted for cast at least 20 per cent. of the total vote. Such parties are required to elect all their candidates (with exceptions noted in section 1550-1g, Ky. Stats.) in the manner provided and not otherwise. Ky. Stats. sec. 1550-5. However, when we read section 1550-1e, Ky. Stats., we find it provided that "nothing in this Act shall be construed to prevent any political organization or party, not constituting a political party within the definition embraced in Section one thousand five hundred fifty-five (1550-5), Kentucky Statutes, Carroll's one thousand nine hundred thirty (1930) Edition, from making their nominations for any of the offices mentioned in this Act as they are now permitted by law to make same."

By comparing section 1550-5 of the 1930 statute with the same section of the 1936 statute, it will be found that they are identical. The court may not be

advised as to whether or not there is a political organization or party known as the Independent Party, but we are cognizant of the fact that no such organization qualified as a party under the terms of the primary act by casting the requisite number of votes either in 1932 or 1936. We do not know, nor are we concerned, whether or not appellee was a member of the party whose banner he carried; it is quite certain, and this fact is emphasized by counsel for appellant, that he was running and elected as an Independent candidate.

Counsel for appellant insists that the primary election act, 1550-1c et seq., Ky. Stats., repealed "all other laws in conflict therewith." Section 1550-1h. By reference to that section it is noted that there was only a specific repeal of the former party primary laws. If "all other laws" were thereby repealed, it must result by implication and we cannot agree that laws permitting nominations by parties not embraced within the meaning of the party primary law, nor yet such law or laws as we had permitting a candidate to have his name placed on the regular election ballot by petition by complying with certain formal prerequisites, were repealed. Ky. Stats. sec. 1457. Should we hold to the views expressed by appellant, we would necessarily have considerable portions of the party primary act unconstitutional, since it would force every candidate for office (with exceptions noted above) to enter the party primaries, and to prevent qualified electors from securing a place on the regular November ballot, thus depriving electors from exercising the right of suffrage. Such a holding would not be in accord with the freedom and equality of elections guaranteed by the Bill of Rights.

We cannot take this narrow view of the laws with relation to suffrage, particularly the broad provisions of the general election laws which appear to have been enacted to carry out fully the mentioned constitutional guarantees. Hence we are of the opinion that the primary law does not repeal section 1453 et seq., Ky. Stats. That section, after providing how a candidate of a political organization may secure a place on the ballot (otherwise than by a party primary nomination), goes further and provides a place on the ballot for any individual who may comply with the requisite formalities. Substantially this section provides in part that the county clerk of each county shall cause to be printed on the regular ballot "the names of such candidates for

office, when petitioned so to do by electors qualified to vote for such candidates as shall file petitions having thereon the required number of qualified electors. If the office sought is a state office, one thousand petitioners; representative in Congress, or for a *district* not specified in the section, 400 petitioners. For a county office or member of the assembly, 100; for an *officer* of a precinct or ward, or *other division less than* a county, 20 petitioners."

It is required that no petitioners shall be counted, "except his residence and post office address be *designated.* Such petition shall state the name and residence of each of such candidates; that he is legally qualified to hold such office; that the subscribers desire, and are legally qualified, to vote for such candidate; and shall designate a brief name or title of the party or principle which said candidates represent, together with any simple figure or device by which they shall be designated on the ballot." Petitions of nomination required to be filed with the Secretary of State are to be so filed not more than 75 days nor less than 45 days prior to the election. The same is true of certificates required to be filed with the county clerk. Section 1456 Ky. Stats. Certificates and petitions of nomination of candidates for all offices to be filled by the electors of a county or a district or subdivision of a county are to be filed with the county clerk. Certificates and petitions of candidates for offices to be voted for by the electors of the state, other than members of the general assembly, or of any division or district of the state exclusively are to be filed with the Secretary of State.

Appellee contends that he complied fully with the provisions of the requirements above mentioned; appellant says he did not; what was done by appellee in this and other particulars has heretofore been recounted.

Counsel, in support of his argument that the section of the primary act of 1936 quoted supra repeals the provision of the general law with regard to petition nominations, cites Wells v. Hutcheson, 205 Ky. 617, 265 S. W. 1109, and Whitney v. Skinner, 194 Ky. 804, 241 S. W. 350, pointing to the fact that this court in each of those cases held that the law required that nomination for municipal offices, where the commission form of government existed, must have been made by primary election. The first-named case was decided in 1924, the latter in 1922.

At the time these cases were decided, section 3480-b-6 et seq., Ky. Stats. 1922, furnished an exclusive method of securing a place on the regular election ballot. The section supra began with the prohibition:

"No person shall be elected without first having been nominated in the manner hereinafter prescribed."

That manner was by a primary to be held on the third Saturday before the day of the regular election. The method of getting a name on the primary ballot and the method of holding the primary followed. See Ky. Stats. 1922, 1930, sec. 3480b-10. The compiler of the 1936 statutes was careful to direct attention to the fact that sections 3480b-6 to 3480b-10, inclusive, were specifically repealed by chapter 117, Acts 1932, and section 3480b-10a, 1936 Stats., providing that the mayor and other officers shall be nominated and elected in the manner provided by the general election and general primary laws.

As the law now stands, nominations to the offices named in said section must be made if the candidate is a member of the parties included in the party primary law, under that law (section 1550-1c et seq.). Nominations may also be made by a party convention of an organization not permitted to nominate by party primary. Also a person qualified so to be may be nominated by petition as is provided for in section 1453 et seq., 1936 Stats.

Next in order is the complaint of appellee's petition, its preparation and filing. Appellant says that on the forty-fifth day before the election appellee circulated petitions in both counties, which he filed on the forty-fifth day with the two county clerks, and the Secretary of State. According to his statement, one petition contained twenty-six names, and the other two "less than thirty." It is complained that under section 1456 the Secretary of State is required to certify the names of candidates filing with him, to the various county clerks, "not less than 40 days before the election." There is no showing that such procedure was not followed. Even though the Secretary of State may not have certified at all, such failure would have no effect on appellee's election or title to office. We say this because we are concluded that it was not necessary to have filed with the secretary, and our conclusion is

based on a reading of Ky. Stats. sec. 1453, directing petitions for a division less than a county to be filed with the county clerk. As far back as 1895 this contention was settled in Jones v. Wilshire, 98 Ky. 391, 392, 33 S. W. 199, 17 Ky. Law Rep. 989. The city involved was Newport, perhaps then a larger city than Corbin is at present. The contention there was made that Wilshire was not legally a candidate for mayor because he had filed his petition with the clerk. The court dismissed the contention with this terse expression by the writer of the opinion:

> "A city is a 'division less than a county,' in the meaning of the section [section 1453], and only 20 names are required."

It is next contended that the petitions which were filed by Dr. Cox were so insufficient in form or substance as not to authorize the printing of his name on the regular election ballot. Section 1453, Ky. Stats., in part is quoted:

> "Such petition shall state the name and residence of each of such candidates; that he is legally qualified to hold such office; that the subscribers desire, and are legally qualified, to vote for such candidate."

This may be answered in part by reference to a stipulation we find in the record signed by counsel for both parties:

> "It is hereby stipulated and agreed that the petition of plaintiff filed with the clerk of the Whitley county court, contains the names of more than twenty legal and qualified voters living and residing in the City of Corbin, Whitley County, Ky."

This should end all controversy on that subject.

The Knox county petition is challenged because six of the signers had not registered prior to the signing; one woman's name was signed by her husband without her knowledge, and one man's name was signed by his wife without his consent, though this is contradicted. Complaint is made that ditto marks are used below the words "Corbin, Ky." opposite the name of the first signer of the Whitley-Knox petition, and that one man failed to give his street number.

The main contention is the fact that six of the per-

sons did not register. For the sake of argument it might be so admitted. No such attack is made on the petition filed in the Whitley county clerk's office, nor is any such attack made on the petitions filed with the Secretary of State within the 45 days fixed, both of which were certified to the clerks of the two counties. So with the stipulation before us, and the case of Wyatt v. Ryan, 113 Ky. 306, 307, 68 S. W. 134, 24 Ky. Law Rep. 228, we can see no reason why we should spend time and space to discuss ditto marks, failure of one man to give his street address, or the question as to whether or not each voter should have said: "I am a registered voter." Many, if not all of the objections on this point advanced by appellant are answered in the following cases: Lorenz v. Buckrop, 251 Ky. 1, 64 S. W. (2d) 168, and the recent case of Skaggs v. Fyffe, 266 Ky. 337, 98 S. W. (2d) 884, and cases cited.

It is next argued that there was no vacancy in the office of mayor on September 19, 1936, when Cox filed his petition, hence no election could be held at the November election in 1936. All this argument is based on the admitted fact that upon an order upholding the charges against Marcum in April of 1936, he took an appeal to the circuit court, but that since the appeal was dismissed by Marcum on September 19, 1936, the vacancy did not occur until that day. It is truly said that section 152 of the Constitution does not provide for an election to fill a vacancy that might occur less than three months before the next annual election at which either city, town, county, district, or state officers are to be elected. The petition was filed in due time. At the November, 1936, election there were to be elected: A United States senator, congressman, presidential electors. In Corbin there was an election to fill a vacancy in the office of police judge, and in the Whitley portion a commonwealth's attorney. The election was properly held, if there was a vacancy. State electors are state and not federal officers. Todd v. Johnson, 99 Ky. 548, 36 S. W. 987, 18 Ky. Law Rep. 354, 33 L. R. A. 399; McCreary v. Williams, 153 Ky. 49, 154 S. W. 417.

As to the vacancy, on the face of the record it seems as if appellant has estopped himself to assert that a vacancy did not occur when Marcum was removed. Appellant treated the office as vacant. Testifying for himself he says that upon Marcum's removal he assumed the office of Mayor of Corbin, and has continued so to

function until the suit was brought; that ''following the November election the commissioners elected me mayor, I qualified and executed bond.'' He further says that if Cox be declared legally elected, he understands the law to be that ''I would go back to the commissioner's place.'' Without deciding the matter of estoppel, we are convinced that there was a vacancy as is contemplated by section 152 of the Constitution.

The chief argument of counsel is that because the appeal was prosecuted the vacancy did not occur until the appeal was dismissed. Much argument is indulged in by both parties as to effect of the admitted failure of Marcum to execute an appeal bond. We need not discuss this feature, since it seems to have no bearing on the question. We might say, however, that appellant's argument that no bond was required, would indicate there should be no status quo. All parties treated Marcum's removal as resulting in vacancy. Marcum abandoned the office and did not diligently prosecute his appeal. A vacancy in office exists in contemplation of the law when it is not filled by one who is legally qualified to fill it, and who has a right to continue therein. Section 3266 provides that no person shall be a councilman (now a commissioner) who may be directly or indirectly interested in any contract with the city. We gather from briefs that this was the nature of the charge which resulted in Marcum's removal. Section 3268 provides that, ''if, after his election, any councilman shall incur any of the disqualifications enumerated in the section before the last [section 3266], his office shall be thereby vacated, the fact to be ascertained and declared as provided in the preceding section [section 3267].'' No appeal was provided.

Section 3480b-22, Kentucky Statutes, provides for removal for misconduct, inability, or willful neglect in the performance of the duties of office, the removal to result if the commission unanimously votes to remove. This section grants a public hearing, witnesses to be summoned, representation by counsel, record of the proceedings, and an appeal de novo.

We shall not take the time to discuss the question as to whether or not the removal of Marcum was on account of misconduct (section 3480b-22), or on account of the commissioners finding that he was ineligible to longer hold the office because of his alleged self-interest contract. We shall extend the benefit of doubt to ap-

pellant. However, on the strength of the provisions of section 3480b-21 we are convinced that the office became vacant when the two commissioners by their votes declared Marcum ineligible to serve further. When the mayor here was declared ineligible, the mayor pro tem. stepped in as acting mayor, but under the title of mayor pro tem., and he was so to hold until the vacancy was filled, and then, if his term be not expired, he was to resume his duties as commissioner. The statute is silent as to what was to happen if the officer removed be reinstated by an order of court, but we may readilly assume that the procedure would have been the same.

The statutes seem to remove any doubt on the question, when it provides in the latter part of section 3480b-21 that,

"A vacancy shall exist when any elective officer fails to qualify within ten days after notice of his election, or dies [or resigns], or moves his domicile outside the city * * * or is removed from office in any manner."

Under the statute above, as we construe it, and as it was undoubtedly construed by all the parties, we express the opinion that the vacancy in the office of mayor existed on the day of the removal of Mr. Marcum, therefore was properly to be filled by an election in November of 1936.

It is complained that Cox received a commission from the Governor, and it is argued that he should not have been qualified on presentation of that document. We shall not undertake to discuss the question as to whether or not the Governor is authorized to commission a mayor. All we can say is that if it was not necessary, its possession and presentation did no particular harm. Cox did not rely on the commission alone as a prerequisite for qualifying to the office. He presented a certificate of election from the Knox officials, the Whitley officials, and to make assurance doubly sure, a certificate from the State Board of Election Commissioners. The latter may not have helped much, but like the Governor's commission, it did no harm.

We conclude that the court properly adjudged appellee entitled to be inducted into the office to which he was elected, and that appellant should not impede that induction.

Judgment affirmed.