# Greene, Clark et al. v. Slusher.

Oct. 26, 1945.

W. T. Davis and Logan E. Patterson for appellants.

Cleon K. Calvert and W. L. Hammond for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The suit was instituted by Matt G. Slusher, the Republican candidate for the office of County Judge of Bell County, against Martin Greene, County Court Clerk, and Sam VanBever, praying the clerk be enjoined from placing VanBever's name on the ballot at the coming November election as a candidate for the office of County Judge, under the title of "Law and Order Party." The Democrat candidate for the same office, Robert L. Smith, was made a party defendant. Neither he nor Greene responded. Upon a final hearing a demurrer to VanBever's answer was sustained and as he declined to plead further, a permanent injunction was issued as sought in the petition. This appeal follows.

We state the essentials of the case by the admitted allegations of fact. On July 3, 1945, there was filed with the County Clerk a petition signed by 173 legal voters of Bell County petitioning him to place on the ballot the names of certain persons as candidates for several county offices, including that of Dan Dean for County Judge, under the title, of "Law and Order Party," and as an emblem the picture of a mop and broom, with handles crossed so as to form an "X". Afterward, on October 1st, another petition signed by more than 100 legal voters was filed stating that Dean had died September 11th, and petitioning the clerk to place the name of Sam VanBever as the candidate for County Judge on that ticket. A motion for a temporary injunction was overruled. On review by the Chief Justice of this Court, with other members concurring, the motion for a temporary injunction was sustained and it was ordered issued for the reason that the petition failed to show that the signatories were members of the political organization in which the nomination had become vacant. Promptly thereafter, on October 19th, another petition was filed by persons declaring themselves to be members of that organization and as such asking that VanBever's name be placed on the ballot in substitution of Dean. VanBever's answer set forth these facts and also described the Law and Order Party as a political organization, having a duly constituted governing executive committee, composed of certain persons. A copy of the constitution and by-laws was filed and made a part of the answer by reference. That document sets forth certain principles and policies of good government and adopts the emblem described as the party device. It declares its membership to consist of 513 legal voters of Bell County who had signed a petition to place on the ballots candidates for Circuit Judge and Commonwealth's Attorney in the judicial district composed of Bell and Harlan Counties, and all the legal voters of Harlan County who had signed a similar petition; also all those voters who had signed petitions to have names of candidates for other county offices in Bell County put on the ballot, as well as "thousands of other legal voters of the two counties who have heretofore or may hereafter indicate their intention to affiliate with the party." County and precinct committees were provided for, together with the machinery for the selection of members and for their management of the party.

The appellants, VanBever and the County Clerk, maintain that the Law and Order Party is a "political organization" within the meaning of KRS 118.090, and as such may nominate candidates and have them grouped as a party ticket, and may also fill a vacancy by supplemental petition. The appellee takes the position that this is not a political organization; that the original petitioners had merely sponsored independent nominees, separate and apart from any political affiliation, and one from another; and that when Dean died no vacancy in any ticket resulted, or, if it did, that there is no provision for filling such vacancy. They also maintain that Van-Bever's petition of October 19th came too late, since KRS 119.080 declares that such a petition for the nomination of a candidate must be filed 30 days before the August primary.

Our statutes recognize three distinct groups as being entitled to have their respective candidates or nominees voted for in a regular election, namely, (1) a political party; (2) a political organization which polled as much as two per cent of the total vote of the state at the last presidential election; and (3) independent candidates or a political organization which did not cast that percentage of the total vote in the presidential election.

(1) KRS 119.010 defines a political party within the meaning of the chapter relating to primary elections as "an affiliation or organization of electors representing a political policy and having a constituted authority for its government and regulation, and which cast at least twenty percent of the total vote cast at the last preceding election at which presidential electors were voted for."

(2) KRS 119.020(2) provides that "any political organization not constituting a political party," as thus defined, "may make its nominations as provided in KRS 118.090." That section, 118.090, is a part of the chapter of the statutes relating to the conduct of regular elections. It declares: "Any political organization not constituting a political party within the meaning of KRS 119.010, but which cast two percent of the total vote of the state at the last preceding regular election may nominate, by a convention or primary election held by the party in accordance with its constitution and bylaws."

(3) KRS 118.080 provides that a candidate may be nominated by a petition conforming to its terms. The

concluding term is: "The petition shall designate a brief name or title of the party or principle that the candidate represents, together with any simple figure or device by which it is desired that he be designated on the ballots."

While the statute refers to "a candidate," it is not to be construed as prohibiting several candidates for different offices from being grouped as one organization or under one name or device. The predecessor of this statute, Section 1453, Ky. Statutes, used the plural number. It makes no difference, for we are instructed by the Legislature that in the construction of the Revised Statutes, KRS 446.020: "A word importing the singular number only may extend and be applied to several persons or things, as well as to one person or thing, and a word importing the plural number only may extend and be applied to one person or thing as well as to several persons or things."

The right of more than one candidate to appear on the ballot as a group has long been recognized. Previous cases from Bell County declare the law to be applied to this case. In Creech v. Davis, 51 S. W. 428, 21 Ky. Law Rep. 325, this court held the County Clerk of Bell County should have placed nominees for several county offices together and under the title "Citizens Party" and one device (an open book with the word "Law" and "Order" printed on the pages) and since the clerk was at fault in putting them in separate columns as well as certain bogus candidates, his election over his opponent on the Citizens Party was held void. And in Asher v. Johnson, 192 Ky. 575, 234 S. W. 18, 19, it was held by a majority of the members of the court (the case being submitted on a motion for a temporary injunction) that the county clerk must obey the request of petitioners to place on the ballots the names of several persons as candidates for county offices in Bell County under the title "Law and Order" with the same device used in the Creech case. It was argued there as it is in the present case that there was no such party. We repeat what was said in that opinion: "In the instant case, the voters who signed the petition formed themselves into a party called the Law and Order party, and the common principle to which they proposed to give adhesion was law and order, and they designated that as a brief name of the party and principle which their candidates represent."

The question was presented in some related cases brought before the members of the court for a temporary injunction and involved in this case indirectly that the candidates and all who signed these petitions are registered either as Republicans or Democrats and had participated in the recent August primary; hence that the Law and Order Party has no membership and the petitioners are sponsoring individual men rather than political principles. Our statute covering nominations by petition does not require that the petitioners or the nominee be members of the party or organization described, but simply requires that they state that the nominee is legally qualified to hold the office and that the subscribers desire and are legally qualified to vote for him. See Wilkins v. Duffy, 114 Ky. 111, 70 S. W. 668, 669; Eagle v. Cox, 268 Ky. 58, 103 S. W. 2d 682. In response to a like contention, it was written in Miner v. Marsh, 102 Conn. 600, 129 A. 547, 550:

"It is not required that a new party applying for official recognition on the official ballot should issue forth from a cave of Adullam, and be composed of malcontents of every political stripe. Further, by one of the provisions of General Statutes, sec. 691, those appearing upon the Independent Republican ticket automatically separated themselves from the original Republican organization, each one of them by knowingly becoming 'a candidate for office upon the ticket of another party or organization,' different from that to which each had formerly belonged. The new organization thus formed, even though it had its origin for the purposes of a particular election, without any intention of indefinite continuance, was entitled to privileges of a political party."

We are concerned with a group of electors initiating a political organization or party in the broad sense rather than the technical, or one that comes within the statutory terms just quoted. The statutes make a clear distinction as between a political party and a political organization. It is specific as to the manner of nominating candidates and in filling vacancies for a party and an organization which had polled as much as two percent in the state at the previous presidential election. It leaves an organization not of that class within the group which must nominate by petition. The statutes of Colorado, as construed in Clements v. People, 58 Colo. 105, 143 P. 834, did likewise. They declared that a political organization whose

candidate for Governor at the preceding election had received ten percent of the total vote should come within the statutes governing a political party. The statute provided that any group coming within either classification should make their nominations by a primary election or committees. Other sections required political organizations to select their candidates by petition of the qualified electors. The case involved the question of whether the Progressive Party in the city and county of Denver had become a "party" or was only an "organization." It was disclosed that at the previous election for Governor, Edward T. Costigan had been placed in nomination by petitions as the candidate of the "Progressive Party" and the "Roosevelt Party" and the "Bull Moose Party," and that adding the votes received in all three, had polled more than ten percent of the vote. But it was not revealed in the record that he had done so in each separately. The court held that it would have to regard each as a separate political entity, and concluded that the Progressive Party had not become a "Party" but was a "political organization," which was defined as being "an association of qualified electors who by petition place upon the official ballot individual nominees for public office."

This construction of our statutes is surely sound. Otherwise there could never be another political organization created or political party born. There must be a first time for such to appear on the ballot.

We are of opinion that the record establishes the creation and existence of a minor "political organization" and that the petitioners are seeking to have a vacancy in its list of nominees filled before the ballots for the November election have been printed.

We come to the questions, Have the adherents of that organization the right to do so, and have they proceeded properly in this instance?

The filling of a vacancy in a nomination which has been made in a primary election is covered by subsection (3) of KRS 119.020, which is a part of the primary election law. The first subsection prohibits a political party from making original nominations other than by a primary election (except for some offices of no concern here). Subsection (2) provides that "any political organization" may make its nominations as provided for in KRS 118.090. Subsection (4) of 118.090 provides for

the filling of a vacancy on the ticket before the ballots are printed. It is done by the chairman of the appropriate committee "unless a supplementary certificate or petition of nomination is filed." Here then is a provision for the filling of a vacancy in such an instance by a supplementary petition. It is true this subsection refers to the "death, resignation or removal of any such candidate" as causing a vacancy. But KRS 119.020(2) broadly declares that "any political organization not constituting a political party" may make its nominations as provided in KRS 118.090, and that statute, as we have just pointed out, provides in subsection (4) for the filling of a vacancy by a supplementary petition.

Concerning the time for filing such a supplementary petition, of necessity it is pre-supposed that it will be long after the deadline fixed for the filing of an original petition to get on the ballot—for a county office thirty days before the primary. We cannot think that there was any legislative intention to bar a minor political organization which had not yet attained maturity by casting two percent of the total vote in the state, or which is local in its scope and purpose, but which the law recognizes, and, we might say, encourages, from supplying a vacancy in its list of candidates. Cf. O'Neil v. O'Connell and Martin, 300 Ky. 700, 189 S. W. 2d 965. We think the Legislature left that matter as it did the original nominations, namely, to the broad provisions of KRS 118.080.

In reaching this conclusion we note again the instructions of the Legislature that the statutes "shall be liberally construed with a view to promote their objects and carry out the intent of the legislature." KRS 446.080. And it is the attitude of the courts without such statutory admonition to construe election statutes liberally, especially in favor of citizens whose right to vote they tend to restrict. 18 Am. Jur., Elections, sec. 11. In Napier v. Roberts, 172 Ky. 227, 189 S. W. 206, 209, we observed that it may be "considered a rule of equal public importance that the individual voter should not be deprived of the opportunity of choosing a public servant from among those who may seek the place, unless the plain or manifest purpose of the law demands it."

We are of opinion, therefore, that the court was in error in enjoining the County Clerk from placing the

name of the appellee, Sam VanBever, upon the ballot as the candidate for the office of County Judge under the Law and Order Party.

The judgment is accordingly reversed with directions to set aside the order of injunction and to enter judgment in accordance herewith.