217 So.2d 53

**OPINION OF THE JUSTICES.**

**No. 194.**

Supreme Court of Alabama.

Dec. 13, 1968.

The request of the Governor is as follows:

"December 10, 1968

"TO THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF THE SUPREME COURT OF ALABAMA:

"Gentlemen:

"On November 5, 1968 I was duly elected, by general ticket, an elector for President and Vice-President of the United States, under the provisions of Title 17, Article 20, Sections 222–227, Code of Alabama, 1940, (Recompiled, 1958).

"Under the provisions of Title 3, Section 7, United States Code (62 Stat.672), the electors for President and Vice-President are required to meet and give their votes on the first Monday afer the second Wednesday in December next following their appointment at such place in each State as the Legislature of such State shall direct. The date of such meeting of the electors is December 16, 1968 and the Legislature of Alabama has fixed the place as the office of the Secretary of State in Montgomery at twelve o'clock noon. See Title 17, Section 226, Code of Alabama, 1940, (Recompiled, 1958).

"As Governor, I hold an office of profit under this State. It is my opinion that the office of presidential elector does not constitute an 'office for profit' within the meaning of Section 280 of the Constitution of Alabama, and that I can participate and vote at the meeting of the presidential electors on December 16, 1968, without such action causing me to vacate my office as Governor.

"In view of the important constitutional question involved, however, I hereby request your written opinion pursuant to the provisions of Title 13, Section 34, Code of Alabama, 1940, (Recompiled, 1958) on the following questions:

"1. Does a presidential elector occupy an 'office of profit' within the meaning of Section 280 of our Alabama Constitution?

Opinion of the Justices

3.

"2. If I should attend the meeting of the presidential electors on December 16, 1968 and cast a vote for President and Vice-President of the United States would such action cause a vacation of my office as Governor?

"Sincerely yours,
"/s/ Albert P. Brewer

"Albert P. Brewer
Governor"

The Governor of Alabama
State Capitol
Montgomery, Alabama

Dear Sir:

We acknowledge receipt of your communication of December 10, 1968, in which you request our opinion on two questions relating to electors for president and vice-president of the United States.

In your first question, we are asked whether the position of presidential elector is "an office of profit" within the meaning of the quoted phrase as used in Section 280 of the Constitution of 1901, which recites:

"No person holding an office of profit under the United States, except postmasters, whose annual salaries do not exceed two hundred dollars, shall, during his continuance in such office, hold any office of profit under this state; nor, unless otherwise provided in this constitution, shall any person hold two offices of profit at one and the same time under this state, except justices of the peace, constables, notaries public, and commissioner of deeds." The Supreme Court of the United States has said:

"The sole function of the presidential electors is to cast, certify and transmit the vote of the state for president and vice-president of the nation. Although the electors are appointed and act under and pursuant to the constitution of the United States, they are no more officers or agents of the United States than are the members of the state legislatures when acting as electors of federal senators, or the people of the states when acting as electors of representatives in congress. cons. art. 1, §§ 2, 3." In Re Green, 10 S.Ct. 586, 587, 134 U.S. 377, 379, 33 L.Ed 951.

The Supreme Court of Texas has observed:

" * * * the position of presidential elector is created by the Federal Constitution, and not by State authority. It has been held by some courts that the position of presidential elector is not a State office. See Spreckels v. Graham, 194 Cal. 516, 228 P. 1040, and authorities there cited. However, there are many authorities to the contrary. See 65 C.J. 1270; Walker v. United States, 8 Cir. 93 F.2d 383; Todd v. Johnson et al., 99 Ky. 548, 36 S.W. 987, 33 L.R.A. 399; In Re State Question 137 etc., 114 Okl. 132, 244 P. 806; Donelan et al v. Bird, 118 Ky. 178, 80 S.W. 796; Hodge v. Bryan, 149 Ky. 110, 148 S.W. 21; McCreary v. Williams, 153 Ky. 49, 154 S.W. 417; Eagle v. Cox, 268 Ky. 58, 103 S.W.2d 682. It may be conceded, for the sake of

this discussion, that a presidential elector is a representative of the State in a certain sense, but, even so, we still have for consideration the question as to whether such a position is the kind of 'State office referred to in Article 3101." Stanford v. Butler, 142 Tex. 692, 697, 181 S. W.2d 269, 272, 153 A.L.R. 1054.

We see no occasion, however, to express an opinion as to whether a presidential elector is an officer of either the Federal Government or of the State of Alabama, since we are clear to the conclusion that a presidential elector does not hold an "office of profit" within the meaning of Section 280 of the Constitution of 1901.

To form an opinion on this question, we must consider whether the payments of money, authorized by statute to be made to presidential electors, constitute such compensation as to make the office of elector an "office of profit."

In considering whether membership on a War Emergency Council in a proposed bill pending in the legislature was "an office of profit" under Sections 59 and 280 of the Constitution of 1901, the justices of this court said:

"In those cases we gave careful consideration to the meaning of an 'office' in this state for the purpose then in hand. It is in broad terms that he must be invested with a portion of the sovereign power of the state. It is the same here. Under the definitions there given, we think that the members of the Legislature who may be elected members of the council under authority of the proposed bill No. 66, supra, will be thereby 'appointed to any office of profit under this state' as set out in Section 59, Constitution of 1901, noting that the act carries compensation for the service rendered. However, we wish to say that the result above announced would be different if no compensation were provided for members of the Legislature who were appointed to membership on the council,

and that provision for their actual expenses alone would not be treated as such compensation.

"For like reason the proposed bill, as now set up, will violate Section 280 of the Constitution because it carries with it compensation." Opinion of the Justices, 244 Ala. 386, 390, 391, 13 So.2d 674, 678.

We note that the justices said that position, as a member of the council, was "any office of profit" because "the act carries compensation for the service rendered," but said also "that the result above announced would be different if no compensation were provided for members of the Legislature who were appointed to membership on the council, and that *provision for their actual expenses alone would not be treated as such compensation.*" (Emphasis Supplied)

We turn to the statutes providing for payment of money to presidential electors. The earliest statute which we have found relating to this subject appears to have been an act passed in 1824. It is found in A Digest of the Laws of the State of Alabama, compiled by John G. Aikin (Second Edition, 1836), page 147, and recites:

"§ 8. Each elector of president and vice-president of the United States shall be entitled to receive four dollars for every day's necessary attendance at the seat of government, and four dollars for every twenty miles travelling to and from the same; and in that proportion for a shorter distance; to be paid out of any moneys in the treasury not otherwise appropriated."

This 1824 provision seems to have remained in effect until passage of an act approved March 6, 1876, 1875–6 Acts of Alabama, page 109, which recites:

"SEC. 88. *Be it further enacted,* That each elector for President and Vice-President shall receive eight dollars for each day he necessarily attends at the seat of government, and twenty cents for every mile traveled to and from the same, to be estimated in the same manner as provided by law in relation to members of the General Assembly, to be paid on the oath of such elector by warrant on the State Treasurer."

The amount fixed by the 1876 Act, eight dollars per day, has been brought forward into the Code of 1940 unchanged. The original travel allowance, twenty cents per mile, remains the same. § 227 of Title 17, Code 1940, recites:

"Each elector for president and vice-president shall receive eight dollars for each day he necessarily attends at the seat of government, and twenty cents for every mile traveled to and from the same, to be estimated in the same manner as is provided by law in relation to members of the legislature from his county, to be paid, on oath of such elector, by warrant on the treasurer."

It is obvious that the travel allowance is reimbursement for travel expense. § 226, Title 17, Code 1940, provides that the electors meet at noon on the second Tuesday in December after their election, or on such other day as the congress may fix. It is common knowledge and we judicially know that the electors meet only one day during the four years following their election. *In Re Green,* supra. Eight dollars will amount to nothing more than the expense of attending the seat of government for one day, if that much.

We are of opinion that the eight dollars and travel allowance is nothing more than "provision for their actual expenses alone," as noted in *Opinion of the Justices,* supra. (244 Ala. at 391, 13 So.2d at 678)

While the elector performs a high and solemn duty in casting the electoral vote of this state for president and vice-president of the United States, on consideration of the statutes which we have set out above, we are of opinion that the office of elector is not an "office of profit" within the

 

meaning of that phrase in Section 280 of the Constitution of 1901.

Accordingly, we answer both questions in the negative.

Respectfully submitted,

J. ED LIVINGSTON,
    Chief Justice

THOMAS S. LAWSON,

ROBERT T. SIMPSON,

PELHAM J. MERRILL,

JAMES S. COLEMAN, Jr.,

ROBERT B. HARWOOD,

JAMES N. BLOODWORTH,
    Justices.