In re STATE QUESTION No. 137. REFERENDUM PETITION No. 49. DAVIS et al. v. SIMPSON et al.

No. 16704—Opinion Filed March 9, 1926.

(Syllabus.)

1. **Statutes—Referendum — Filing Copy of Petition with Secretary of State—Substantial Compliance with Statute.**

The copy of a referendum petition delivered to the Secretary of State with a letter transmitting such petition signed "John A. Simpson, Z. H. Lawter, by Campbell Russell," such petition bearing the indorsement "Submitted by John A. Simpson and Z. H. Lawter, Oil Exchange Building, Oklahoma City, Oklahoma," is not void because not in strict compliance with section 6631, Comp. Stats. 1921, providing that "When a citizen, or citizens, desire to circulate a petition * * * for the purpose of invoking a 'referendum upon legislative enactments, such citizen or citizens shall * * * file a true and exact copy of same in the office of Secretary of State," since section 6652, Comp. Stats. 1921, provides that the procedure therein prescribed is not mandatory, but is sufficient if substantially followed.

2. **Same—Sufficiency of Signers to Petition —Highest Vote in Last General Election —Computation—Presidential Electors as "State Officers."**

Presidential electors are state officers within the contemplation of section 2, article 5, of the Constitution of Oklahoma, provid-

ing that the ratio and per centum of legal voters whose signatures are necessary to referendum petitions shall be based upon the total number of votes cast at the last general election for the state office receiving the highest number of votes at such election.

3. **Same—Validity of Signature Where Address Written by Another.**

While the law requires that the signer of an initiative or referendum petition must personally sign his own name thereto, and that such petition must show his residence and post office correctly written after his name, in the absence of any allegation or proof of fraud or corruption, such petition will not be stricken down merely because a limited number of the signers permitted some other person to write his residence and post office thereon after he had personally attached his signature thereto.

4. **Same—Procedure for Initiative and Referendum — Substantial Compliance — Technical Errors.**

In circulating, signing, and filing of initiative and referendum petitions, as provided for by the Constitution of Oklahoma, supplemented by chapter 50, Comp. Stats. 1921, the procedure therein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained, the procedure will be sustained, and clerical and mere technical errors shall be disregarded.

Appeal from Order of Secretary of State.

In the matter of State Question No. 137, Referendum Petition No. 49. From a ruling of the Secretary of State overruling the protest of Fred Davis et al. to petition filed by John A. Simpson and Z. H. Lawter, the protestants appeal. Affirmed.

Fred Davis, for protestants and appellants.

Kirby Fitzpatrick, King L. Fitzpatrick, and Campbell Russell, for respondents and petitioners.

PHELPS, J. The Ninth or 1923 Legislature of Oklahoma enacted House Bill No. 197, known as the Free Text-Book Law, which appears as chapter 175 of the Session Laws of 1923. The Tenth or 1925 Legislature enacted Senate Bill No. 54, repealing the Free Text-Book Law, which act was approved by the Governor on March 31, 1925, and appears as chapter 10 of the Session Laws of 1925. On April 17, 1925, there was filed in the office of Secretary of State a copy of a referendum petition designated Referendum Petition No. 49, State Question No. 137, the purpose of which was to refer to a vote of the people the question as to

whether the Free Text-Book Law should remain in force and effect or be repealed by Senate Bill No. 54, as passed by said Tenth Legislature. Within the time provided by law those sponsoring the referendum petition caused to be circulated, signed, and filed with the Secretary of State petitions containing the names of approximately 28,-500 signers, purporting to be qualified electors, and constituting more than five per cent. of the highest number of votes cast for any office at the last general election. Protest was filed with the Secretary of State challenging the sufficiency of the petition, and after hearing, the Secretary of State found that the signatures of 1,341 petitioners were not in conformity to law and ordered them stricken from the list, and found that the petition was otherwise in substantial compliance with the Constitution and statutes of Oklahoma and overruled the protest, to reverse which this appeal is prosecuted.

Section 6631, Comp. Stats. 1921, which was intended to amplify and provide the procedure for putting into force and effect the initiative and referendum provisions of our Constitution, provides that:

"When a citizen or citizens desire to circulate a petition * * * for the purpose of invoking a referendum upon legislative enactments, such citizen or citizens shall, when such petition is prepared, and before the same is circulated or signed by electors, file a true and exact copy of same in the office of Secretary of State."

The record discloses that when the copy of the petition in question was filed with the Secretaory of State it was accompanied by a letter reading as follows:

"Secretary of State, Oklahoma City, Oklahoma. Dear Sir: I hand you herewith copy of Referendum Petition No. 49, State Question No. 137, same being referendum on Senate Bill No. 54, together with proposed ballot title therefor. John A. Simpson, Z. H. Lawter, by Campbell Russell."

And the document bore the following indorsement:

"Submitted by John A. Simpson and Z. H. Lawter. Oil Exchange Building, Oklahoma City, Oklahoma."

And the Secretary of State issued his receipt therefor, which read:

"Received of Mr. Campbell Russell Referendum Petition No. 49, State Question No. 137, for John A. Simpson and Z. H. Lawter. Received, at 4:16 p. m., April 17, A. D. 1925."

It developed at the hearing of the protest before the Secretary of State that John A. Simpson was president and Z. H. Lawter secretary of the Farmers Union of the state of Oklahoma, and that after the copy of the referendum petition was filed with the Secretary of State the petitions were sent to the various local organizations of the Farmers Union over the state and by them circulated among their members to obtain signatures to the petition, and that the expense of circulating the petitions was borne largely by that organization. And the first objection to the petition urged in the brief of protestants is that it—

"Clearly shows that this petition was not only fostered and circulated by the Farmers Union, but was paid for out of the funds of the organization"

—and that being the case, it is claimed that the petition does not substantially conform to the provisions of section 6631, Comp. Stats. 1921, prescribing the duties of a citizen or citizens desiring to circulate such petition. In our judgment this contention is without merit. Substantially the same question was before this court in the very recent case of In re State Question No. 138, Initiative Petition No. 89, Milburn v. State Taxpayers Association, decided Jan. 12, 1926, 114 Okla. ——. 244 Pac. 801, and it was there held that the petition was not invalid because prepared and filed under the direction of the State Taxpayers Association, and as the subject was somewhat exhaustively discussed in that case, we deem it unnecessary to repeat it in detail here.

Section 2 of article 5 of the Constitution provides that:

"The ratio and per centum of legal voters hereinbefore stated shall be based upon the total number of votes cast at the last general election for the state office receiving the highest number of votes at such election."

And over the objection of petitioners, the Secretary of State took as a basis for determining the number of signers necessary the vote cast at the last general election for presidential electors, finding that the highest total number of votes cast for presidential electors was 528,440, and that on such basis the petitions must contain five per centum of such number, making a total of 26,420 signatures of legal voters necessary to refer the measure in question. At the hearing and in their briefs, petitioners complain that the Secretary of State erred in taking the vote on the presidential electors for such basis contending that they are not state officers within the contemplation of the Constitution, but, since the record discloses that a greater number of votes were cast for presidential electors than for any other office voted for at the last general election,

it is our opinion that the Secretary of State properly designated the office of presidential elector as state office and used the vote cast therefor as the basis upon which to determine the number of signatures necessary.

Plaintiffs in error further complain that there were 560 petitioners whose names were written upon the petition by someone other than the person whose names appeared thereon, and that in pamphlets containing 180 names the circulator's name was omitted therefrom, but we observe that in each instance the Secretary of State properly struck these names from the list and they were not included in the number found to be legal petitioners.

They further complain that in many instances the post office address of the petitioner was written in the petition by some person other than the one whose signature appeared thereon, and insist that all such names should be stricken from the list. This court has several times held, and it is the well-settled law of this state, that the signer of an initiative or referendum petition must personally affix his signature to the petition, but we find no statute that directs and no adjudicated cases that hold that the post office address of the signer must in all cases be written by his own hand.

Section 6624, Comp. Stats. 1921, sets out the form of a referendum petition, in which the signer is required to certify that he personally signed the petition and that his post office address was correctly written, and section 6629, Comp. Stats. 1921, sets out the form for the verification of the signatures by the circulator, wherein the circulator is required to state that the petitioner

—"and each of them signed his name thereto in my presence; I believe that each has stated his name, post office address and residence correctly."

Therefore, we cannot conclude that, where the petition is presented to the voter and he attaches his signature thereto, then hands the pamphlet to the circulator or some other person, who writes therein the post office address and residence in the presence of the signer, in the absence of any allegation or proof of fraud or corruption, that this act alone would be sufficient to justify the striking of his name from the petition.

In Re Referendum Petition No. 31, 68 Okla. 147, 172 Pac. 639, the post office addresses of some 5,000 of the signers were omitted from the sheets circulated at various points in the state far removed from each other, and the sheets sent to H. at Oklahoma City, who filled in the post office addresses apparently by guesswork, and in that case it was held by this court that that manner of adding the post office addresses destroyed the presumption that the signatures were those of legally qualified electors, and hence destroyed the presumption of the validity of the petition. It will thus be observed that quite a different situation existed there from the one under consideration, and the record before us, in our judgment, justifies the presumption that the addresses were written in these petitions at the request of the signers, and the Secretary of State was justified in overruling the protestants' objections to these names upon this ground, although it would be a much better practice, and one which we would highly recommend, for each signer of an initiative or referendum petition to not only write his own name upon the petition but his residence and post office address as well.

Plaintiffs in error further complain that some of the petitions were circulated by minors and that in a number of instances the street and house number of the signers, giving their post office addresses in cities, were not given. These questions were both before this court and were discussed at length in Re State Question No. 138, Initiative Petition No. 89, Milburn v. State Taxpayers Association, supra, and we, therefore, deem it unnecessary to again go fully into these questions here.

A number of other minor questions, such as that the notary public before whom the circulator verified the signatures had failed to attach his seal or to give his post office address, are raised herein, but an examination of the record convinces us that they are highly technical and without merit, and as section 6652, Comp. Stats. 1921, provides that:

"The procedure herein prescribed is not mandatory, but if substantially followed will be sufficient. If the end aimed at can be attained, the procedure shall be sustained, clerical and mere technical errors shall be disregarded"

—we have no difficulty in reaching the conclusion that, although technical errors are apparent, the procedure was substantially followed, particularly in view of the fact that to sustain the petition does not put into effect any new law, but merely enables the people to exercise the privilege of expressing their sentiments at the polls as to whether they desire the Free Text-Book Law to remain in force and effect, or to be repealed by the enactment of Senate Bill No. 54, and we conceive it to be our duty to assist the people in expressing such desire at the polls

when this can properly be done in conformity to established laws, rather than preventing them, upon a mere technicality, from doing so.

We, therefore, conclude that, after striking the 1,341 illegal names from the petition as the Secretary of State did, there remain a sufficient number of signatures placed there in substantial conformity to law to make the petition valid. It is, therefore, ordered that the clerk of this court transmit all papers and documents on file in his office pertaining to such petition to the Secretary of State, who is directed to conform to the requirements of the law in accordance with the views herein expressed.

NICHOLSON, C. J., BRANSON, V. C. J., and LESTER, HUNT, CLARK, and RILEY, JJ., concur.