W. T. STANFORD ET AL V. GEORGE A. BUTLER ET AL.

No. A-222.   Decided June 22, 1944.
(181 S. W., 2d Series, 269)

*James V. Allred* and *Jesse Andrews,* both of Houston, *Johnson & Rogers,* of San Antonio, *John W. Davis,* of Dallas, *Paul Donald,* of Bowie, *Ernest Guinn* and *Robert L. Holliday* of El Paso, *Herman Jones, Everett Looney, Geo. E. Shelley* and *A. J. Wirtz,* of Austin, and *Bert King,* of Wichita Falls, for relators.

Under Article 3101, R. S., all candidates for State offices shall be nominated by party primaries, if such political party has cast

one hundred thousand votes in the last general election, and the office of Presidential Elector, being a State office, under Article 3079, the name of such candidate is entitled to a place on the primary election ballot. Brown v. Darden, 121 Texas 495, 505 S. W. (2d) 261; Love v. Wilcox, 119 Texas 256, S. W. (2d) 515; Ramsey v. Tod, 95 Texas 614, 69 S. W. 133.

*W. H. Walne, James L. Shepherd, John Bullington* and *John C. Townes,* all of Houston, *T. H. McGregor* and *C. C. Small,* of Austin, *A. B. Culbertson* and *Rice Tilley,* both of Fort Worth, *R. J. Boyle,* of San Antonio, *C. C. Renfro, J. Hart Willis, Gabe Allen, Roy C. Coffee* and *M. N. Chrestman,* all of Dallas, for respondent E. B. Germany and others.

*Perkins & Floyd,* of Alice, for respondent H. J. Mosser.

*William Pannill, Sidney Samuels, B. B. Stone, Tom James, Thompson, Walker, Smith & Shannon, Homa Hill, Irvin T. Ward* of Cleburne, and *Lloyd E. Price* of Fort Worth, for respondent Arch Rowan.

*A. B. Culbertson* of Fort Worth, *C. C. Renfro of Dallas* and *C. C. Small* of Austin, for respondents Neth Leachman and others.

*Frank J. Knapp* and *Butler & Binion,* of Houston for respondent, George A. Butler.

*Turner & Seaberry* of Eastland, *W. O. Gross* of Mineral Wells, *James G. Harrell,* of Breckenridge, *George E. Smith* of Comanche, *Chas. E. Coombes* of Stamford, and *Joseph A. Chandler* of Stephenville, for respondent Fred Brown.

*W. Alvis Parrish, James L. Shepherd, John P. Bullington, Wm. M. Ryan* and *Walter Walne,* all of Houston, *John Redditt,* of Lufkin, *McAlister & Tucker,* and *C. C. Denman,* all of Nacogdoches, for respondent T. G. Tilford.

*Andrews, Kelley, Kurth & Campbell, R. H. Kelley, McDonald Meachum, Frank A. Liddell, Lewis Fisher, Fulbright, Crooker, Freeman & Bates,* and *John H. Freeman,* all of Houston, for *John Wheeler,* in person, of San Antonio, *John H. Crooker,* in person, of Houston, *T. G. Tilford,* in person, of Nacogdoches, *Whitaker, Turpin, Kerr, Smith & Brooks, Stubbeman, McRae & Sealy, T. D. Kimbrough,* and *Ashby & Fitzgerald,* all of Midland, *Henry Russell,* of Pecos, *J. E. Quaid* and *S. J. Isaacks,* both of El Paso, for respondent Thomas J. Pitts.

*E. M. Davis, Gib Calloway, Woodruff & Holloway,* all of Brownwood, and *T. D. Kimbrough* of Midland, for respondent W. H. Rampe.

The election laws of Texas make no provision for nomination of candidates for Presidential Electors in primary election, and since the statute is silence as to the method of nomination of such nominees, a party has the right to choose its nominees in any manner it may see fit not inconsistent with the existing laws, in the exercise of its political power, which exercise is not subject to judicial control. Lane v. McLemore, 169 S. W. 1073 Waples v. Marrast, 108 Texas 5, 184 S. W. 180; State v. Standard Oil Co., 130 Texas 313, 107 S. W. (2nd) 550; Stephens County v. Hefner, 118 Texas 397, 16 S. W. (2d) 804; 39 Tex. Jur. 234.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

W. T. Stanford and twenty-two others have filed in this Court an original application for write of mandamus against the Democratic Executive Committee of the State of Texas, and the members thereof, and others, to compel said Executive Committee to certify petitioners' names to the County Chairman of the Democratic Party in each county in the State as candidates for the Democratic nomination for the position of Presidential Electors for the State of Texas.

■ The Supreme Court has jurisdiction to issue a writ of mandamus to require the party executive committee to place the name of an applicant on the primary ballot in a proper case. Revised Statutes, Article 1735a, (Acts 1930, 41st Leg. 4th C. S., p. 4, ch. 4, paragraph 1) ; Love v. Wilcox, 119 Texas 256, 28 S. W. (2d) 515, 70 A. L. R. 1484. However, under a well-stablished rule the writ will not be granted unless petitioners show a clear right thereto. Wortham v. Walker, 133 Texas 255, 128 S. W. (2nd) 1138, and authorities there cited.

On or prior to the first Monday in June, 1944, petitioners filed with the Secretary of the Democratic Executive Committee their request to have their names placed upon the official ballot for the General Democratic Primary as candidate for the nomination of the Democratic Party as Presidential Electors for the State of Texas for the year 1944. The applicants complied with the provisions of Revised Statutes, Article 3111, which prescribes the procedure to be followed by anyone wishing to have his name placed on the ballot as a candidate for the party nom-

ination for a regular State office. They also paid the filing fee of $100.00 each as provided by Article 3116. The Executive Committee has refused to certify the names of petitioners as candidates for such nominations.

The record shows that the Democratic Party at its May 1944 Convention (provided for by Article 3167) selected its nominees for presidential electors, and the Executive Committee of the Party has certified the names of such nominees to the Secretary of State as the nominees of said Party and as candidates for said positions. The petitioners herein were not among those so certified to the Secretary of State as nominees of the Democratic Party.

The question to be determined is whether or not the Party nominees who are to have their names placed on the ballots of the general election as candidates for the position of presidential electors may be selected by the Party Convention, as was done in this instance, or whether they must be selected by direct vote of the people at the Party primary, as contended for by petitioners.

Article II, Section 1, of the Constitution of the United States provides for the appointment of presidential electors as follows:

"The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice-President, chosen for the same Term, be elected, as follows:

"Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress; but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector."

A careful search of our statutes discloses that there is no express provision which points out specifically how the nominee of a political party for the position of presidential electors shall be selected. Petitioners rely on the provisions of Revised Statutes, Articles 3101 and 2978, as sustaining their contention that such nominees must be nominated in the primary election of the Party.

Revised Statutes, Article 3101, which relates to party nominations, provides as follows:

"On primary election day in 1926, and every two years there-

after candidates for Governor and for all other State offices to be chosen by vote of the entire State, and candidates for Congress and all district offices to be chosen by the vote of any district comprising more than one county, to be nominated by each organized political party that cast one hundred thousand votes or more at the last general election, shall, together with all candidates for offices to be filled by the voters of a county, or of a portion of a county, be nominated in primary elections by the qualified voters of such party." (Acts 1st C. S. 1905, p. 549.)

It is conceded, of course, that the Democratic Party cast more than 100,000 votes at the last general election in Texas.

It will be noted that Article 3101 contains no express provision for the party nomination of presidential electors at the primary election, but it is petitioners' contention that the position of presidential elector is a "State office" within the meaning of that Article, and hence candidates for party nomination for such positions must be nominated in the party primary election. On the other hand, it is the contention of respondents that the position of presidential elector is not the kind of "State office" referred to in Article 3101, and hence there is no provision in the statute which requires candidates for such positions to be nominated in the party primary.

■ As above pointed out, the position of presidential elector is created by the Federal Constitution, and not by State authority. It has been held by some courts that the position of presidential elector is not a State office. See Spreckels v. Graham, 194 Calif. 516, 228 Pac. 1040, and authorities there cited. However, there are many authorities to the contrary. See 65 C. J. 1270; Walker v. U. S., 93 Fed. (2d) 383; Todd v. Johnson et al., 99 Ky. 548, 36 S. W. 987, 33 L. R. A. 399 In Re State Question 137, etc., 114 Okla. 132, 244 Pac. 806; Donelan et al v. Bird, 118 Ky. 178, 80 S. W. 796; Hodge v. Bryan, 149 Ky. 110, 148 S. W. 21; McCreary v. Williams, 153 Ky. 49, 154 S. W. 417; Eagle v. Cox, 268 Ky. 58, 103 S. W. (2d) 682. It may be conceded, for the sake of this discussion, that a presidential elector is a representative of the State in a certain sense, but, even so. we still have for consideration the question as to whether such a position is the kind of "State office" referred to in Article 3101.

■ Article 3101 provides: "* * * candidates for Governor and for all other State offices * * * and candidates for Congress * * * shall * * * be nominated in primary elections by the qualified voters of such party." It will be noted that the statute names one State office, that of Governor, as an example of what is meant, and then includes "and for all other State offices." It will be

seen that words of specific and particular meaning are followed by general words. Under the rule of ejusdem generis, where specific and particular enumerations of persons or things in a statute are followed by general words, the general words are not to be construed in their widest meaning or extent, but are to be treated as limited and applying only to persons or things of the same kind or class as those expressly mentioned. The rule in this respect was announced by this Court in Farmers & Mechanics National Bank v. Hanks, 104 Texas 320, 137 S. W. 1120, Amer. Ann. Cas. 1914B, 368, as follows:

"It is a prime rule of construction that where in a statute general words follow a designation of particular subjects or classes of persons the meaning of the general words will be restricted by the particular designation in such statute. This is known as the rule of ejusdem generis, and is a rule of almost universal application."

The office specifically mentioned in Article 3101, that of Governor, is an office existing under and by virtue of the laws of Texas, to which there has been committed by the laws of this State the authority to exercise a portion of the sovereign power of the State for a fixed period; whereas the position of presidential elector is created by the Constitution of the United States, and the one chosen for that position is authorized to perform the single act of casting a vote for the President and Vice-President of the United States—a function prescribed by the Federal law. Applying the rule of ejusdem generis, the general words "all other State offices" must be held to be limited by the more specific enumeration of the particular office mentioned—that of Governor; and since this latter office is created by the laws of the State, to discharge functions prescribed by the laws of the State, the more general words "all other State offices" must be limited to offices existing and functioning under the laws of Texas, and not as including positions which exist only by virtue of the laws of the Federal Government for the discharge of a function prescribed by the Federal law.

■ There is another material difference between State offices created by State authority and that of presidential elector. Vernon's Annotated Civil Statutes, Article 2929a-1 (Acts 1937, 45th Leg., p. 1320, ch. 486, paragraph 1) fixes the day for the beginning of the term of all elective State offices, except Governor, Lieutenant Governor, and members of the Legislature, as of January 1st after the general election in the preceding November; whereas presidential electors cast their votes on the first Monday after the second Wednesday in December after the gen-

eral election in November. U. S. C. A., Title 3, Chap. 1, paragraph 5a. It will be seen that under the law presidential electors are expected to fully discharge their duties as such electors prior to the time fixed by the statute for the beginning of the term of "State offices" as used in Article 2929a-1.

■ There are other statutes enacted by the Legislature which evidence legislative recognition of a distinction between "State offices" and presidential electors. For example, Article 1352, prior to its amendment in 1941, prohibited political contribution by corporations to candidates "for any State * * * office" or for "Presidential or Vice-Presidential Electors." If the Legislature had intended to include presidential electors within the generally accepted class of State offices, it would not have been necessary to name them specifically. Article 2946 provides: "Notice shall be given to the people of all elections for State and district officers, electors for president and vice-president of the United States, members of Congress, members of the Legislature, and all officers who are elective every two years." Thus again the Legislature, by mentioning both State officers and presidential electors, recognized a distinction between State officers in the usually accepted meaning, and presidential electors.

■ Furthermore, in view of the doubt as to the meaning of the provisions of Article 3101, we think the construction placed on the election laws of this State for many years by the Democratic Party and the officers charged with the duty of executing the elections laws, as well as the Legislature itself, necessarily leads to the conclusion that it was not intended by the Legislature that party nominees for presidential electors should be selected by primary election. The Terrell Election Law was enacted in 1905. (Acts 1st C. S. 520). The first sentence of Section 117 of that Act was in all material respects in identically the same language as is Article 3101 at this time. In 1908, preparatory to the first presidential election to be held after the adoption of that Act, the Democratic Party nominated its candidates for presidential electors in convention, and not by primary election. In fact, continuously since the original enactment of the Terrell Election Law, for a period of nearly 40 years, the Democratic Party has nominated its candidates for presidential electors by conventions, and not by primary elections. The party has thus definitely committed itself to the belief that the statute contemplated that the nominees for such position should be so selected. Each time the nominees have been so selected they have been certified to the Secretary of State, and that officer has accepted the nominees as selected, and certified their names to the various county judges throughout the State, and has caused their names to be

placed on the general election ballot. The people have voted on the nominees so selected without question, and those elected from among such nominees have performed the duties of electors. No question as to the right of such nominees to have their names placed on the official ballot as the nominees of the Party has ever been raised.

Texas Jurisprudence announces the rule with reference to contemporaneous construction of statutes as follows:

"The contemporaneous construction of an act by those who are charged with the duty of its enforcement—that is, executive and administrative officers and departments, as well as by the courts and the Legislature—is worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence. Although a contemporaneous or practical construction is not absolutly controlling, it has much persuasive force and is entitled to great weight in determining the meaning of an ambiguous or doubtful provision." (Vol. 39, p. 234, paragraph 125.)

"The courts will ordinarily adopt and uphold a construction placed upon a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and the construction so given it is reasonable." (Vol. 39, pp. 235, 236, paragraph 126.)

Moreover, the Legislature, knowing that the Democratic Party and the Secretary of State had interpreted Article 3101 as permitting the selection of party nominees for presidential electors in conventions, recodified the laws of this State in 1911, and again in 1925, and each time it carried foward the provisians of said Article 3101 in substantially the same language as it was when so interpreted by the Democratic Party and the Secretary of State.

■ It is a very well-established rule that where a statute of doubtful construction has been construed by executive officers of the State charged with its execution, and it has subsequently been re-enacted without substantial change of language, it will continue to receive the same construction. Tex. Jur., Vol. 39, p. 266, paragraph 141; Stephens County v. Hefner, 118 Texas 397, 16 S. W. 804, 805; Oden v. Gates, 119 Texas 76, 24 S. W. (2d) 381; Shaw v. Strong, 128 Texas 65, 96 S. W. (2d) 276; Federal Crude Oil Co. v. Yount Lee Oil Co., 122 Texas 21, 52 S. W. (2d) 56.

Furthermore, in 1913, several years after the enactment of

what is known as Article 3101, the Legislature of this State, by Acts 1913, Chap. 46, p. 88, adopted what was then designated as Article 3175a, by which it undertook to provide for party nominations of presidential electors in primary elections. Sections 1 and 3 of that Act read in part as follows:

"Section 1. Provided, that on the fourth Tuesday in May, A. D. 1916, and every four years thereafter, in addition to the candidates heretofore required to be nominated at the regular nominating election, the qualified electors of the political parties of this State shall have the opportunity to vote their first and second preference on their party nominating ballots for their choice of those aspiring to be the candidates of their respective parties for President and Vice-President of the United States, and for the nomination of their party presidential electors, and the election of their party delegates to the National convention of the respective political parties of this State. * * *"

"Section 3. The fact that there is no law permitting the people of Texas to express their choice for President, Vice-President, electors and elect their delegates to the National convention in a preference primary, creates an emergency * * *."

It will be noted that the Legislature in Section 1 provided for the election of party candidates for presidential electors, *"in addition to the candidates heretofore required to be nominated at the regular nominating election;"* and in Section 3 expressly stated that *"there is no law now permitting the people of Texas to express their choice for President, Vice-President, electors,"* etc. The Legislature was there legislating on a subject that was in pari materia with that dealt with in the election laws then in force, and in doing so the Legislature expressed its belief, in positive language, that there was no law then in force in the State which permitted the selection of party nominees for presitential electors by primary ballot. It is true that said Article 3175a was held unconstitutional by this Court in Waples v. Marrast, 108 Texas 5, 184 S. W. 180, L. R. A. 1917a, 253, on the ground that the provision for payment of the expense of the primary out of State funds constituted an appropriation of public money for private purpose. But this fact in nowise weakens the force of the argument that the Legislature at that time was of the opinion that there was then no statute in force in this State which permitted the selection of party nominees for presidential electors by primary ballot.

■ There is a very well-established rule that where a later Act implies a particular construction of an existing law, and particu-

larly where the existing law is ambiguous or its meaning uncertain, interpretation of the prior Act by the Legislature as contained in the later Act is persuasive when a court is called upon to interpret the prior law. 39 Tex. Jur., 239. In the case of Cannon's, Administrator, v. Vaughan, 12 Texas 399, this Court said:

"It is another established rule that all acts in *pari materia* are to be taken together, as if they were one law, and that if it can be gathered from a subsequent statute, in *pari materia*, what meaning the Legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute."

The prior interpretation of our election laws by the Democratic Party, the executive officers of the State charged with their execution, and the Legislature itself, to the effect that Party nominees for presidential electors are to be chosen by convention and not by primary election, furnishes compelling argument that we should give that statute the same construction.

■ Petitioners also rely on Revised Statutes, Article 2978, which relates to the ballot to be used in the general election. That Article reads in part as follows:

"* * * It (the official ballot to be used in the general election) shall contain the printed names of all candidates whose nominations for an elective office have been duly made and properly certified. The names shall appear on the ballot under the head of the party that nominates them, except as otherwise provided by this title. No name shall appear on the official ballot except that of a candidate who was actually nominated (either as a party nominee or as a non-partisan or independent candidate) in accordance with the provisions of this title. The name of no candidate shall appear more than once upon the official ballot, except as a candidate for two or more offices permitted by the Constitution to be held by the same person. The name of no candidate of any political party that cast one hundred thousand votes or more at the last preceding general election shall be printed on any official ballot for a general election, unless nominated by primary election, on primary election day, except as herein otherwise provided." (Acts 1st C. S. 1905, p. 520.)

We are of the opinion that this Article was intended to apply only to candidates who are required by other provisions of the law to receive their party nominations in party primary elections. While the statute provides that the name of no candidate of any political party shall be printed on the official ballot unless

nominated by primary election, it contains the provision "except as herein otherwise provided." This, to our minds, excepts cases in which the nominees are not required to be so selected. In Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037, 1039, this Court had under consideration a case in which the Democratic Executive Committee had undertaken to select a party nominee as a candidate to fill the unexpired term of a railroad commissioner who had died after the primary election. This court, after holding that by reason of the express provisions of the statute the executive committee of the party had no authority to make the nomination, went further, and held that the Democratic Party itself had such authority. It was there said:

"The failure of the Legislature to provide any method for a nomination under the conditions created by the death of Mr. Williams does not mean that the Democratic party was without any authority to make a nomination for the office of Railroad Commissioner. In our opinion it has that authority. The mere failure of the Legislature to provide an available method does not defeat its right to make a nomination. The right exists and in our opinion might be exercised in any manner agreeable to party usage not expressly forbidden by law. The use of the executive committee as a method is expressly so forbidden, in our view, by Article 3173, and it can not, therefore, be availed of. But except as the executive committee is denied any power of nomination under the conditions presented, plainly the making of a nomination under such conditions is unregulated by any statute law, and it could, therefore, in our opinion, be made in accordance with the party law and agreeably to party usage."

At that time Article 2978 was in the same language as it is now. Of course, if that Article had prohibited the placing of the names of all party nominees on the official ballot who had not been selected by primary election, it would have served no useful purpose for the Democratic Party to select a nominee by convention; yet this Court held that if no other method was provided for the selection of such nominee, such nomination could be made in party convention. In so holding the Court necessarily implied that a nominee so selected, when there was no statutory method provided for his nomination, would be entitled to have his name placed on the official ballat at the general election as the nominee of the party.

In view of the fact that there is no clear statutory provision authorizing the selection of party nominees for presidential electors by primary ballot, and in view of the fact that the Democratic Party and the officers of this State charged with the execution of election laws, as well as the Legislature, have

for such a long period of time construed the law as authorizing the selection of such nominees by convention, and not by **primary** ballot, we feel compelled to give the law the same construction.

In this connection, it should be noted that there is no statutory provision prescribing whether such nominees shall be selected by districts or on a State-wide basis; nor is there any provision for the classification of candidates within the Party according to the issues involved. Obviously, candidates for presidential electors should be chosen according to their position on the issues presented in each particular campaign. In addition, there appears to be no limit as to the number who may apply as candidates for such positions. In the absence of suitable regulations governing the matters above referred to, there would be much confusion in such an election. Under such circumstances this Court should not undertake to force the Democratic Party to so select its nominees for such positions, in the absence of clear legislation requiring such action.

■ In the absence of a statute directing how the Party should select its nominees for presidential electors, the Party is free to follow any method which it may choose in keeping with Party usages and customs, so long as it does not pursue a method expressly prohibited by law. Love v. Buckner, 121 Texas 369, 49 S. W. (2d) 425; Brown v. Darden, 121 Texas 495, 50 S. W. (2d) 261; Kilday v. Germany, 139 Texas 380, 163 S. W. (2d) 184. We therefore hold that petitioners have no right to compel the Democratic Party to select its nominees for such positions by primary election.

The petition for writ of mandamus is refused.

On account of the emergency, due to the near approach of the time for the printing of the ballots of the July primary, the petitioners will be denied the right to file a motion for rehearing.

Opinion delivered July 22, 1944.