

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 28, 1950.

Hon. George B. Butler, Chairman
Board of Insurance Commissioners
Austin, Texas       Opinion No. V-1099.

                      Re:  The legality of an amend-
                          ment to the charter of a
                          farm mutual insurance com-
                          pany organized under Arti-
                          cle 4860a-20, V.C.S., to
                          permit removal of its home
                          office outside the county
                          of its authorized insur-
Dear Sir:                   ance activity.

        You have requested the opinion of this office
with regard to a farm mutual insurance company, organ-
ized under and within the definition set out in Article
4860a-20, V.C.S. Such company, under authority of its
original charter, established its home office in the
county of its authorized insurance activity as provided
in Article 4860a-20, Section 15. It now proposes to
amend its charter so as to authorize the relocation of
its home office in another county outside the area of
its authorized territorial limit of insurance activity
under the indicated statute. In a conference with the
proper administrative official of your department, it
was determined that your questions submitted may be
stated as follows:

        (1)  May the company amend its charter?

        (2)  May the company amend its charter in such
a manner as to permit relocation of its home office in
another county, so as to authorize it to write insurance
in the county of relocation if such county of relocation
is outside the original territorial limits for writing
insurance prescribed in Article 4860a-20, Section 15,
V.C.S., and prescribed in the original constitution, by-
laws and articles of association of the company?

        County mutual insurance companies, as initial-
ly defined, authorized and regulated in 1937 by the 45th
Legislature, which first passed the Act subsequently

codified as Article 4860a-20, V.C.S., were clothed with most of the essential characteristics of the type of mutual insurance companies authorized to write insurance other than life insurance, as set out in Chapter 9 of the Insurance Title in Vernon's Civil Statutes, except on certain enumerated risks. Since then they have operated with but slight statutory regulation until 1947 when the Legislature amended Article 4860a-20 and provided more detailed exactions of such companies. For one thing, it then defined a sub-classification of county mutual insurance companies by providing that those maintaining more than 60% rural risks or operating on the assessment-as-needed plan, as therein defined, should be termed farm mutual insurance companies, which classification exempted them from certain statutory requirements. It is with regard to companies coming within the statutory definition of farm mutual insurance companies that you inquire.

Your first question regards the authority of those farm mutuals to amend their charters. An examination of Article 4860a-20, V.C.S., as last amended in 1949 by the 50th Legislature, reveals no specific authority stated therein to amend its charter subsequent to its initial grant. It will be observed that other types of insurance companies have varying specific and general grants of legislative authority to amend or alter their charters. Thus, for example, authority for life insurance companies to amend may be found in Article 4719; authority for Chapter 7 mutual insurance companies may be found in Article 4819; and authority for Chapter 9 mutual insurance companies may be found in Article 4860a-4. The absence of specific authority to amend the charters of farm mutual insurance companies in Article 4860a-20, the statute providing for their creation, does not preclude their amending when we observe the provisions of Article 4715, applicable alike to all insurance companies, including farm mutuals, as follows:

"The laws governing corporations in general shall apply to and govern insurance companies incorporated in this State in so far as the same are not inconsistent with any provision of this title."

Under the general corporation statutes it is provided and has long been established that corporate charters may be amended. Thus, Article 1314, V.C.S., reads, in part:

"Any private corporation organized or incorporated for any purpose mentioned in this title, may amend or change its charter or act of incorporation. . . ."

There being no provision in Article 4860a-20 pertinent to the securing of the charter by a farm mutual insurance company and to continued subsequent operations thereunder by such company which would be inconsistent with the foregoing general provision authorizing other corporations to amend their charters, we find authority to amend their charters as other domestic insurance corporations, through the Board of Insurance Commissioners, by the reference in Article 4715 to the general corporation laws of this State and to the unquestioned authority of domestic corporations generally to amend their charters under Article 1314.

We also observe in this connection that we have been informed that county mutual insurance companies have been uniformly permitted since 1937 to amend their charters by the Board of Insurance Commissioners so as to change the company name. It is, of course, well established that departmental construction by the agency of the State administering the provisions of a particular statute is entitled to weight in construing statutes where ambiguity exists. Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269 (1944); Texas Employers Ins. Ass'n v. Holmes, 145 Tex. 158, 196 S.W.2d 390 (1946).

Therefore, in answer to your first question, it is the view of this office that farm mutual insurance companies, organized and operating under Article 4860a-20, V.C.S., may amend their corporate charters.

Having concluded that such companies have authority to amend their charters generally, we turn to your second question regarding their authority to amend their charters to permit relocation of their home office in another county in such a manner as to authorize their writing insurance in the county of relocation, when, without such amendment, they would be confined to the original territory as provided in Article 4860a-20, Section 15, V.C.S., and as prescribed in the original constitution, by-laws and articles of association of the company.

This question is clearly directed at the practice, accepted among other types of insurance companies, of purchasing charters and moving companies to new territories. We have, however, in connection with the type of insurance company under consideration here, a statutory restriction on the territory in which these companies may write insurance. That restriction, found in Section 15 of Article 4860a-20, V.C.S., reads as follows:

"A County Mutual Insurance Company may write insurance (a) in any County adjoining the County in and for which it is organized, or (b) in any County in which no County Mutual Insurance Company has been organized, or (c) anywhere, if its reserve fund, or policyholders contingent liability, or both such reserve fund and contingent liability taken together, exceeds the sum of Fifty Thousand ($50,000.00) Dollars." (Emphasis supplied.)

It is provided in Section 3 that the original application to solicit insurance as a county mutual insurance company shall state "the locality of the principal business of such company". Further identification for enforcement of the statutory restriction as to the territory in which such companies may write insurance is provided in the requirement found in Section 4 of the statute, which provides that the charter and articles of incorporation of such companies shall state, among other things, "the place of its principal office". As a matter of fact, as to county mutual insurance companies, the Board of Insurance Commissioners is required to make an investigation prior to granting a charter to determine "the probability that the territory to be served can support such company". Section 2a.

Since the original and continuing territory in which such companies may write insurance is determined by the county in and for which it is organized, under Section 15, such companies could not, by moving the home office subsequent to organization, alter or in any way change the original authorized territory of writing insurance. The technical connotation in the insurance field of the terms "writing insurance" refers to the location of the risk insured.

Therefore, your second question is answered to the effect that a farm mutual insurance company is not authorized to amend its charter so as to permit relocation of the home office in another county and thereby authorize, by the fact of relocation alone, such

company to write insurance in the county of relocation, when such county of relocation is outside the original territorial limits for writing insurance prescribed in Article 4860a-20, Section 15, V.C.S., and prescribed in the original constitution, by-laws and articles of association of the company.

## SUMMARY

A farm mutual insurance company, organized and operating under Article 4860a-20, V.C.S., may amend its corporate charter. It may not, however, by amendment of its charter, constitution, by-laws or articles of association, authorize the relocation of its home office in a county other than the county of its organization so as to permit the company to write insurance in the county of relocation, when that county is outside the authorized territorial limits for writing insurance prescribed in Article 4860a-20, Section 15, V.C.S.

APPROVED:

Ned McDaniel
State Affairs Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

Yours very truly,

PRICE DANIEL
Attorney General

By _Dean J. Capp_
Dean J. Capp
Assistant

DJC:rt:jmc