

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

January 25, 1954

Honorable Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Opinion No. S-120

Re: Proper appropriation year
against which refund of
Judiciary Retirement Sys-
tem contributions should
be charged.

Dear Mr. Calvert:

Your request for an opinion reads as follows:

"The Legislative Act creating the Judi-
ciary Retirement System provides for with-
drawals for contributions made by a member to
the system after such member has severed his
connection with the system. The law does not
fix any specific time for the ex-member to
withdraw his contributions.

"The question now before us is the proper
appropriation year to charge with the member's
contribution when he files claim for withdrawal.
For example, a member severs his membership in
August, 1951, but does not file his claim to
withdraw his contributions until December, 1953.
Is his claim payable out of the appropriations
available for that purpose in the year 1951 or
out of the appropriations available for that
purpose for the year 1953? Please advise in
the premises.

"Would the same rule apply to an ex-member
withdrawing his contribution from the Teacher
Retirement System and also to an ex-member with-
drawing his contribution from the Employees Re-
tirement System?"

Section 6 of the Judiciary Retirement Act (Article 6228b, Vernon's Civil Statutes) provides:

"Should any Judge of any Court of this State die, resign or cease to be a Judge of a Court of this State, except in the event of his appointment or election to a Court of higher rank, prior to the time he shall have been retired as provided under the provisions of this Act, the amount of his accumulated contributions shall be paid to his beneficiary nominated by written designation duly filed with the Chief Justice of the Supreme Court, or to him, as the case may be. . . ."

Article 4357, V. C. S., reads in part:

"No warrant shall be prepared except on presentation to the warrant clerk of a properly audited claim, verified by affidavit to its correctness, the proper auditing of which claim shall be evidenced by the initials written thereon by the person auditing the same; and such claim so verified and audited shall be sufficient and the only authority for the preparation of a warrant or warrants. No claim shall be paid from appropriations unless presented to the Comptroller for payment within two (2) years from the close of the fiscal year for which such appropriations were made, but any claim not presented for payment within such period may be presented to the Legislature as other claims for which no appropriations are available. . . ."

We think it is clear that a claim for refund arises at the time the member ceases to be a judge. The warrant cannot be issued until the formalities of presentment of the claim have been complied with, but the claimant's right to apply for the refund accrues as of the date the judgeship ceases.

The Judiciary Retirement Act does not specify any time limit within which refund must be applied for, and a claimant does not lose his right to the refund by delay in

applying for it. There would be nothing to prevent the Legislature from providing for payment of claims which were filed during the appropriation period without regard to the dates of their accrual. On the other hand, the appropriation could be made to pay claims which accrued during the period. In the latter case, the claimant would have to present his claim within two years from the close of the fiscal year in which it accrued in order for it to be paid out of the regular appropriation. If not presented within that time, the claim would have to be paid by special appropriation, by virtue of Article 4357. The fact that Article 6228b does not limit the time within which claims must be filed does not necessarily mean that they can be paid from the regular appropriation at any time they are filed. Article 4357 provides the mode for payment if the claim is not presented within two years from the close of the fiscal year for which the regular appropriation for its payment is made.

The controlling question, then, is whether the appropriations were intended to cover claims for refunds which were filed within each particular appropriation period or claims which arose within that period.

Section 2 of Article I of the current appropriation act (Ch. 81, Acts 53rd Leg., 1953, at p. 139) appropriates $5,000.00 for each year of the biennium "to refund accumulated contributions as provided in Section 6" of Article 6228b. Similar appropriations were made for the two preceding bienniums, except that the appropriation in each instance was for "such sum or sums of money as may be necessary" instead of being limited to a stated amount. Sec. 2 of Art. I, Ch. 499, Acts 52nd Leg., 1951, at p.1239; Sec. 4 of Ch. 585, Acts 51st Leg., 1949, at p. 1169. These acts do not expressly state whether the appropriations are for payment of claims which accrued or which were presented for payment within the period of the appropriation. We must therefore arrive at the legislative intent on the basis of other considerations.

Ordinarily, an appropriation is for payment of claims which arise during the period of the appropriation. This is necessarily true where the appropriation is a limitation on the amount of the claims which can be incurred during the period. While any limitation on the amount appropriated for repaying contributions is not a limitation on the amount of the refund claims which can arise during the appropriation

period, we are of the opinion, when the provisions of the appropriation acts are construed together with the provisions of Article 6228b, that the legislative intent was to appropriate an amount to cover claims which arose during each period.

In the first place, we think that in the absence of evidence to the contrary it is more reasonable to assume that the Legislature intended to follow the same practice as that established for appropriations generally. In the next place, it is noteworthy that the last appropriation act stated a specific amount which could not be exceeded for payment of these claims. It is more reasonable to assume that the Legislature arrived at this amount by estimating the claims which would arise during each year than by estimating the amount of claims which would be presented for payment under a system which would allow payment at any time the claim happened to be filed. In either event, the amount would be only an estimate and might not conform to the actual total of the claims, but there would be a greater likelihood for disrupting the orderly payment of the claims if their filing could be delayed until later appropriation periods. If a large number of claimants happened to wait until a later year to present their claims, it would dissipate the appropriation more rapidly than was anticipated and might interfere with the payment of claims which were filed promptly. We are unwilling to attribute such an intent to the Legislature in the absence of clearer evidence that this was the intent.

It is therefore our opinion that the appropriations for the fiscal years of the 1953-1955 biennium are for payment of claims which arise during these periods. We are also of the opinion that the prior appropriations were also for payment of claims which arose during those respective periods. We do not believe the 53rd Legislature had any intention of changing the basis of the appropriation and thereby creating a hiatus in the payment of these claims. The 1953 appropriation act is a legislative interpretation of Article 6228b and the prior appropriation acts and is entitled to weight in arriving at the meaning of the prior acts. Stanford v. Butler, 142 Tex. 692, 181 S.W.2d 269 (1944).

You have asked whether this same rule applies to payment of contributions which are withdrawn from the Teacher Retirement System and the State Employees Retirement System.

As we have stated, the question is one of legislative intent, which must be derived from each particular set of statutory provisions.  These two acts (Art. 2922-1, Sec. 5, Subd. 6; Art. 6228a, Sec. 5, Subd. F) give the claimant a seven-year period within which to make application for refund, and at the end of that period the amount must be refunded even though the claimant has not applied therefor.  These provisions evidence a legislative intent that the claimant may receive payment out of the regular appropriation at any time within this period.  If the appropriation from which payment was to be made was determinable by the date on which the claim arose, the refund at the end of the seven-year period could be accomplished only by presentment of the claim to the Legislature in accordance with Article 4357.  However, the provision for mandatory refund at the end of this period shows that the refund is payable out of the regular appropriation and the limitation period in Article 4357 does not begin to run until the seven-year period has elapsed.

## SUMMARY

A refund of accumulated contributions under the Judiciary Retirement System is payable out of the appropriation for the period in which the claim arises, rather than for the period in which the claim is presented for payment.  However, refund of accumulated contributions under the Teacher Retirement System or the State Employees Retirement System should be paid out of the appropriation for the period in which the application for refund is filed, if filed within seven years.

APPROVED:

John Atchison
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General

By *Mary K. Wall*

Mary K. Wall
Assistant