# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==============

## NO. 03-00-00131-CV

==============

### Dizdar Development, Inc. and Central Education Agency, Appellants

### v.

### Board of Trustees of Mission Consolidated Independent School District, Appellee

==================================================================

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. 99-11705, HONORABLE ERNEST C. GARCIA, JUDGE PRESIDING

==================================================================

Dizdar Development, Inc. ("Dizdar") and the Central Education Agency appeal from a district-court judgment that reverses a final order issued by the Commissioner of Education in a suit brought by the board of trustees of the Mission Independent School District ("Mission"). We will reverse the district-court judgment and remand the cause to that court.

## THE CONTROVERSY

Dizdar owns subdivision lots in Hidalgo County. About half the lots lie in the Mission district, the other half lie in the Sharyland Independent School District ("Sharyland"). Dizdar initiated in each school district a proceeding to detach from the Mission district the lots therein and to annex them to the Sharyland district.[1] Both school districts denied the relief requested by Dizdar. Dizdar

---

[1] The petitions for detachment and annexation were actually filed by "Marted, a Texas General Partnership," Dizdar's predecessor in title and interest. For convenience, however, we

appealed from their decisions to the Commissioner of Education under former section 11.13(a) of the Texas Education Code. This statute authorized such appeals by a person aggrieved by the "actions or decisions of any [school district] board of trustees." Act of Aug. 26, 1986, 69th Leg., 2d C.S., ch. 4, § 3, 1986 Tex. Gen. Laws 6, 10 (Tex. Educ. Code Ann. § 11.13(a), since repealed and codified at Tex. Educ. Code Ann. § 7.057(a)(2)(A) (West 1996)) ("§ 11.13(a)").[2]

In a final order, the Commissioner declined to set aside the school-district decisions on Dizdar's petition for detachment and annexation. Dizdar sued in district court for judicial review of the order. *See* Act of June 6, 1990, 71st Leg., 6th C.S., ch. 1, § 2.22, 1990 Tex. Gen. Laws 1, 22 (Tex. Educ. Code Ann. § 11.13(c), since repealed and codified at Tex. Educ. Code Ann. § 7.057(d) (West 1996)). The district court rendered judgment affirming the Commissioner's order. In an earlier appeal taken by Dizdar to this Court, we held the district court and the Commissioner had each erred in the construction they placed upon a statute not material in the present appeal. We therefore reversed the district-court judgment and remanded the controversy to the Commissioner. *See Marted v. Central Educ. Agency,* No. 3-97-267-CV (Tex. App.—Austin Jan. 15, 1998, pet. denied) (not designated for publication).

---

will treat Dizdar as the litigant before the Commissioner and in district court, where Dizdar intervened in the present cause.

[2] The writing of our opinion is burdened a good deal by the fact that we are required to consider the interplay of present and former sections of the Texas Education Code. The Code was revised and amended extensively in 1995, but the present litigation is governed by sections 11.13 and 19.0221 as these existed before 1995. For clarity, we will hereafter refer to these in the present tense as if they were still in effect. Where necessary, we will identify by appropriate terms the post-1995 provisions that bear on the parties' contentions and arguments.

Following our remand to the Commissioner, Mission moved that he dismiss Dizdar's administrative appeal on the basis of section 19.0221(i) of the Code, a statute treated at length below. The Commissioner declined to dismiss Dizdar's appeal and proceeded to the merits of the controversy. Based on findings of fact and conclusions of law set forth in a final order, the Commissioner granted Dizdar's petition for detachment and annexation of the lots in question.

Mission sued in district court for judicial review of the Commissioner's final order. The Central Education Agency appeared by answer; Dizdar intervened in the cause in defense of the order. Following a hearing, the district court reversed the Commissioner's order and implicitly remanded the controversy to that officer for dismissal for want of subject-matter jurisdiction.[3] Dizdar and the Central Education Agency appeal now from the district-court judgment.

**DISCUSSION AND HOLDINGS**

In its petition filed in district court, Mission alleged the Commissioner's order was in excess of his statutory powers because he had construed erroneously the relevant provisions of the Code. Mission advances the same contention as appellee here. The Central Education Agency and Dizdar contend on appeal that the Commissioner properly construed the relevant statutes to conclude

---

[3] The district-court judgment requires construction. It reverses "in all respects" the Commissioner's "decision." The judgment declares that this action is "based on the jurisdictional arguments presented by" Mission. The judgment omits, however, to make any disposition of Mission's cause of action even while it states "[t]his is a final judgment." Because the judgment was obviously intended to be a final judgment based on Mission's allegation that the Commissioner lacked jurisdiction to hear and determine Dizdar's administrative appeal, we conclude the proper construction and effect of the judgment is to reverse the Commissioner's final order and to remand the controversy to that officer to be dismissed for want of subject-matter jurisdiction.

3

he possessed power to hear and determine the merits of Dizdar's administrative appeal from the school districts' disapproval of Dizdar's petition for detachment and annexation.

We must begin our discussion with section 11.13(a) of the Code. *See* Tex. Educ. Code Ann. § 11.13(a). This statute in general terms authorizes administrative appeals to the Commissioner in the following terms:

> [P]ersons having any matter of dispute among them arising under the school laws of Texas or *any person aggrieved* by the school laws of Texas or *by actions or decisions of any board of trustees* . . . may appeal in writing to the commissioner of education . . . .

§ 11.13(a) (emphasis added). So far as this statute is concerned, the right to an administrative appeal is limited only by the requirement that the affected person be "aggrieved" by the school laws or an action or decision of a board of trustees. That is the simple, obvious, and plain meaning of the statute. Section 19.0221 of the Code appears in a subchapter titled "Detachment and Annexation of Certain Territory." It is thus a more particular statute and should be understood accordingly. In section 19.0221, the legislature provided as follows:

(h) If both boards of trustees of the affected districts *approve* the petition, each commissioners court to whom the matter is required to be reported shall enter an order redefining the boundaries affected by the transfer [of territory].

(i) If the board of trustees of *either* affected district disapproves the petition, an aggrieved party . . . in *either* district may appeal the board's decision to the commissioner of education under Section 11.13 of this Code.

4

Act of May 10, 1991, 72d Leg., R.S., ch. 152, § 1, 1991 Tex. Gen. Laws 742 (Tex. Educ. Code Ann. § 19.0221(h)(i), since repealed and codified at Tex. Educ. Code Ann. § 13.051(i)(j) (West 1996)) (Emphasis added).

As it did below, Mission contends section 19.0221(i), properly interpreted, *denies* the right to appeal to the Commissioner when *both* affected districts disapprove a petition for detachment and annexation. Consequently, section 19.0221(i) operates as an exception to section 11.13(a) of the Code, which creates a general right to an administrative appeal. Because both districts disapproved Dizdar's petition in this instance, Dizdar had no right to appeal to the Commissioner and the Commissioner had no power to decide the appeal in those circumstances. Dizdar and the Central Education Agency disagree, of course, with Mission's interpretation of section 19.0221(i). We conclude section 19.0221(i) will not reasonably bear the meaning Mission attributes to it.

The most conspicuous factors evident in these provisions of the Code are as follows: (1) section 11.13(a) grants a general right to appeal to the Commissioner free from any restrictions apart from a requirement that the person be "aggrieved" by an action or decision of "any board of trustee"; and (2) not a single word or phrase in section 19.0221(i) carries a connotation of denial, restriction, or limitation—instead, the words of that section are consistent only with the idea that a right to an administrative appeal *exists* in the circumstances described therein. Section 19.0221(i) declares unequivocally that an aggrieved party "may appeal" if the board of trustees of either affected district disapproves the petition. This is consistent and harmonious with the general right to an administrative appeal created in section 11.13(a).

Mission advances several arguments in support of its contrary interpretation of section 19.0221(i). Mission argues first that in both subsections (h) and (i) of section 19.0221, the legislature indicated an intention to make final and exclusive the decisions of affected districts when they *concurred* in either approving or disapproving a petition for detachment and annexation. Mission reasons thus from the fact that section 19.0221(h) omits to provide *within itself* a right to appeal to the Commissioner when both districts *approve* a petition for detachment and annexation. Mission argues next that the legislature's use of the singular possessive noun "board's" in section 19.0221(i) indicates that no right to an administrative appeal was intended when both boards of trustees disapproved a petition. "If an appeal were authorized when both boards disapproved," Mission reasons, "then the appeal would be from the 'boards' decisions." And if the text of section 19.0221(i) will not bear these contentions, Mission points to a sentence in the legislative bill analysis referring to section 19.0221(i). That bill analysis declares that section 19.0221(i) "[a]uthorizes an appeal to the commissioner of education by a party to the proceedings from either school district if one district disapproves the petition."

So far as we understand these contentions, none of them addresses the essential factors mentioned above: (1) section 11.13(a) gives a general right to an administrative appeal to any person aggrieved by *any* decision or action of *any* board of trustees; and (2) nothing in section 19.0221(i) or elsewhere in the Code purports to deny or restrict that right created in terms so general. *If* section 19.0221(i) or another section of the Code purported affirmatively to deny the right to an administrative appeal when both districts disapproved a petition, then that denial *would* restrict the general right created in section 11.13(a), but no such statutory provision has been suggested to us

and we have found none. It is immaterial then that the legislature omitted to provide in section 19.0221(h) for an administrative appeal when *both* districts concurred in approving a petition—the right to such an appeal exists in such instances by virtue of section 11.13(a) when no statute purports to deny the right. The same logical flaw undermines Mission's arguments based on the use of the singular possessive noun "board's" and Mission's argument from the bill analysis. We turn then to another argument made by Mission in support of its contention.

In 1995, the legislature rearranged and amended the Code extensively. Former section 19.0221(i), which lies at the core of the present dispute, was amended to provide exactly what was missing theretofore—statutory language denying expressly a right to an administrative appeal when both districts disapprove a petition. The pertinent part of the Code now provides as follows: "If both boards of trustees of the affected districts disapprove the petition, the decisions may not be appealed." Tex. Educ. Code Ann. § 13.051(j) (West 1996). Mission does not contend the 1995 amendment *governs* the present case. Mission argues instead that the 1995 amendment demonstrates what the legislature intended by its *earlier* enactment of section 19.0221(i), namely an intention to deny the right to an administrative appeal when both districts disapproved the petition. We may note here that if such was the legislature's intention in composing the language of section 19.0221(i), the legislature chose the most inapt language possible to express such an intention when it chose words of grant rather than words of denial or restriction. More to the point, perhaps, Mission's theory rests entirely upon a naked *implication* Mission imputes to the text of section 19.0221(i). This is an argument from silence, without authority, and impermissible in all events.

7

> The settled rule is that when the legislative intent can be gathered from a reasonable interpretation of the language of a statute, it is not permissible to resort to interpretation by implication. Interpretation by implication is permitted only to supply obvious intent not expressly stated, and never to contradict nor add to a statute.

*Commonwealth of Mass. v. United N. & S. Dev. Co.,* 168 S.W.2d 226, 229 (Tex. 1942); *see also Sexton v. Mt. Olivet Cemetery Ass'n,* 720 S.W.2d 129, 138 (Tex. App.—Austin 1986, writ ref'd n.r.e.). One observes that the implication for which Mission contends contradicts the right to an administrative appeal given expressly and generally in section 11.13(a).

Mission does not deny a contention made by Dizdar and the Central Education Agency that the Commissioner has consistently interpreted section 19.0221(i) to mean that an administrative appeal may be taken to him when the board of trustees of both districts disapprove a petition. This is, in our view, a reasonable interpretation of section 19.0221(i) for the reasons set out above—the almost unrestricted right to an appeal given in section 11.13(a) and the absence of any denial or restriction of that right in the Code provisions pertaining to detachment and annexation of school-district territory.

Mission points out next that in our opinion in the first appeal, we referred to a 1995 amendment of another section of the Code. "Given that [the court] looked beyond the controlling statute [a pre-1995 statute] to its successor statute in order to reach a just interpretation," Mission argues, "it is equitable that this Court do so again and look beyond the controlling statute [section 19.9221(i)] to its successor statute in this situation." This argument is based on a false premise. It assumes that in the first appeal we treated the 1995 amendment as having some bearing on the meaning to be assigned the pre-1995 statute involved in that appeal. We did not. Even a casual

8

reading of our earlier opinion demonstrates without question that we referred only to the fact that the controlling pre-1995 statute *had* been amended. *See Marted,* slip op. at 4 n.1. Nothing in our opinion remotely suggested that the amendment bore upon our conclusion that the statute in question, as interpreted by the Commissioner, produced an absurd result.

The mere fact that section 19.0221(i) *was* amended in 1995 to prohibit administrative appeals, in cases like the present, carries a presumption that the legislature intended to *change* the original enactment by withdrawing or rescinding a right to appeal that *existed* before. *See American Sur. Co. of N.Y. v. Axtell,* 36 S.W.2d 715, 719 (Tex. 1931); 1A Sutherland Statutory Construction § 22.30, at 266 (5th ed. 1993). While the presumption is not conclusive, Mission has not suggested any persuasive considerations in support of a contention that the legislature did *not* intend such a change in the law by its 1995 amendment of section 19.0221(i).

The best that may be said in support of Mission's position is that section 19.0221(i) is ambiguous or uncertain as to whether an administrative appeal may be taken when both school districts disapprove a petition for detachment and annexation. We believe the statute is unambiguous and certain in that respect. Assuming the contrary, however, it was the Commissioner's duty to interpret the ambiguous or uncertain statute and assign to it a particular meaning, which he did. His chosen meaning was that such a right of appeal existed in those circumstances. We cannot say this contradicts the plain meaning of section 19.0221(i) or that it is otherwise unreasonable in context. We refer again to the fact that the general right of appeal exists by virtue of section 11.13(a) and nothing in section 19.0221(i) or elsewhere denies the right. While we are not bound by the

9

Commissioner's interpretation of the statutes, we will not in these circumstances set aside his interpretation. *See Sanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944).

For the reasons given, we hold the district court erred in its judgment that the Commissioner lacked subject-matter jurisdiction over Dizdar's administrative appeal. We therefore reverse the judgment below and remand the cause to the district court for proceedings not inconsistent with our opinion. Because our discussion and holdings are a sufficient basis for our decision, we need not consider the remaining assignments of error brought by Dizdar and the Central Education Agency.

_____

John E. Powers, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers[*]

Reversed and Remanded

Filed:  November 30, 2000

Do Not Publish

[*]  Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).